West Towns Bus Company, an Illinois Corporation,
Appellant, v. Division 241 Amalgamated Associa-
tion of Street Electric Railway and Motor Coach
Employees of America, AFL–CIO, et al., Appel-
lees.

Gen. No. 47,961.

First District, First Division.

July 1, 1960.

Rehearing denied July 26, 1960.

400

Joseph F. Elward and Edward S. Macie, of Chicago, for appellant.

Nash, Ahern and McNally, John J. Kennelly, Lester Plotkin, and William Levine, of Chicago (A. L. Cronin, William Levine, and John J. Kennelly, of counsel) for appellees.

MR. JUSTICE MURPHY delivered the opinion of the court.

This is a declaratory judgment action by plaintiff, an employer, to impeach a wage dispute arbitration award favorable to the defendant Union, and to restrain its enforcement. The court sustained defendants' motion to strike and dismissed the complaint. Plaintiff appealed to the Supreme Court, which transferred the cause to this court.

■■ The transfer of the appeal disposed of constitutional questions. Defendants' motion to strike and dismiss admits all facts well pleaded (Bush v. Babb, 23 Ill.App.2d 285, 162 N.E.2d 594), and although the complaint, as amended and supplemented, is construed strictly against plaintiff, it is entitled to all reasonable inferences which can be drawn from the well-pleaded facts. Field v. Oberwortmann, 14 Ill.App.2d 218 (1957), 144 N.E.2d 637.

Plaintiff, West Towns, is a public utility, operating a motor bus system for transportation of passengers for hire. The Union, members of which operate the motor busses of plaintiff, is an unincorporated association with about 10,000 members. A collective bargaining agreement, covering wages and working conditions of the employees, was entered into between West Towns and the Union on June 1, 1948, and covered the period from June 1, 1948, to May 31, 1949. Supplemental agreements thereafter covered terms of one or two years. The sixth supplemental agreement covered the period from June 1, 1956, to May 31, 1958.

Being unable to agree on a renewal contract because of wage and fringe benefit disputes, the parties executed an arbitration agreement on October 31, 1958, with the provision that any award "shall be retroactive to and effective as of June 1, 1958." The board of arbitration was composed of three members—Evan J. Mc-

Ilraith, appointed by West Towns, O. David Zimring, appointed by the Union, and these two, in turn, selected a third member, J. Russell Christianson, who was "to act as Impartial Arbitrator and Chairman of the Board of Arbitration." Each party agreed to "pay the expense of its arbitrator," and the compensation of the third arbitrator and joint expenses to be borne equally by the parties.

The board convened on December 9, 1958, heard oral arguments on December 12, 1958, and then took the matter "under advisement." On December 16 and 17, 1958, the three arbitrators met and attempted to agree on an arbitration award. They were unable to agree on an award and on December 17, 1958, unanimously agreed that the arbitration was terminated and separated.

After the separation of the three arbitrators, chairman Christianson sent to West Towns and to the Union a letter dated December 17, 1958, in which he stated, among other things, that "at a final Executive Meeting of the Board of Arbitration . . . motions for an Arbitration Award were presented by each of the three arbitrators and no one of said motions was seconded by any other arbitrator." It also stated: "It is the unanimous opinion of this Board of Arbitration that under the terms of paragraph 5 of the Arbitration Agreement, which provides that the Award must be reached by a decision of a majority of the Board of Arbitration, that if such a decision cannot be reached, arbitration proceedings are therefore terminated without a decision or an Award. In the near future, the Chairman will present an opinion to both parties and either of the arbitrators may present similar opinions to both parties."

The next morning, December 18, 1958, Evan J. McIlraith, arbitrator appointed by West Towns, left Chicago for Florida, after informing the other two ar-

bitrators of his plans. He remained outside of Illinois until January 19, 1959. That afternoon, December 18, 1958, West Towns was notified by the Union that Zimring had resigned as arbitrator, and the Union had appointed Thomas Shields to act as its arbitrator in place of Zimring. Later, on the same afternoon, the attorney for West Towns notified the Union and chairman Christianson that it objected to the substitution of Shields, who "is not, at this time and under these circumstances, competent to act as a substitute arbitrator and that he has no power or right in the matter."

On the afternoon of December 19, 1958, at 2:59 p. m., the attorney for West Towns notified chairman Christianson that a telegram, addressed to McIlraith, had been received at the company office of West Towns, giving notice of a meeting of the arbitrators at 3:00 p. m. that day, at Christianson's office. The attorney objected to the holding of a meeting of the arbitrators, because at a "final Executive Meeting" held by the board of arbitrators, the arbitration was terminated, and that "Mr. McIlraith, as was known to you and Mr. Zimring," left for Florida on the morning of December 18, "for the Christmas holidays." He stated that it was the position of West Towns that the authority of the board of arbitrators to make an award "had terminated prior to the alleged substitution of Mr. Shields and cannot thereafter be revived."

On December 19, 1958, chairman Christianson and Shields, acting as a board of arbitration, executed an arbitration award, in which it is related that "The Board of Arbitration met, conducted extensive hearings, resulting in 579 pages of testimony, and 34 number of exhibits for the Association, and 22 number of exhibits for the Company." The Union prepared and on December 22, 1958, forwarded to West Towns a seventh supplemental agreement, which incorporated

the terms of the arbitration award, effective as of May 31, 1958, and until May 31, 1959.

On December 22, 1958, West Towns moved the board to vacate and set aside the award and, in substance, stating that the award was illegal and void. West Towns persisted in its refusal to accept the award and on February 14, 1959, the Union notified McIlraith, as president and general manager of West Towns, that the Union members employed by West Towns would suspend work on February 23, 1959.

West Towns' complaint, filed on December 31, 1958, includes, as exhibits, copies of all documents and letters. On April 6, 1959, after a hearing, the court sustained a motion to strike and dismiss the complaint, as amended and supplemented, and decreed that the arbitration award was valid and binding upon the parties.

The question before us is whether the complaint, as amended and supplemented, states a cause of action sufficient to bring it within the provisions of section 57.1 of the Civil Practice Act. The principal subordinate question is whether the original arbitrators, lacking a majority agreement on an award, without notice to or prior consent of the parties to the submission agreement, could unanimously agree to terminate the arbitration before an award was made and to separate and dissolve the board.

■■ The rights and liabilities of the parties are governed in Illinois by common law and by a statute entitled Arbitration and Awards (Ill. Rev. Stat. 1957, Ch. 10, §§ 1–18), which was enacted in 1917. (Cocalis v. Nazlides, 308 Ill. 152 (1923), 139 N. E. 95.) As a general rule, the power and authority of arbitrators is derived from and determined by the arbitration agreement under which they were appointed and by the provisions of the statute. The agreement and the statutes should be read in harmony, if possible. American

406

Eagle Fire Ins. Co. v. New Jersey Ins. Co., 240 N. Y. 398, 148 N. E. 562, 565; 6 C.J.S. 190.

■ As contended by West Towns, where the submission contains no specific time limitation, it is generally held that the authority of arbitrators is terminated by their inability to agree and make an award, if they give notice thereof to the parties or separate with the understanding that no further meetings shall be held. (6 C.J.S. 190, 192; Atchison, T. & S. F. Ry. v. Brotherhood of Locomotive Firemen and Enginemen, 26 F.2d 413 (1928).) Section 3 of the Illinois Arbitration Act provides that a submission to arbitrators shall, unless a contrary intention is expressed therein, be irrevocable. This was held constitutional (White Eagle Laundry Co. v. Slawek, 296 Ill. 240 (1921), 129 N. E. 753; Cocalis v. Nazlides, 308 Ill. 152, 155, 139 N. E. 95) and applies here.

■ In interpreting a submission agreement, the motives of the parties and the ends which they sought to accomplish must be taken into consideration. The agreement provides that "Both parties have the right of substitution of their respective arbitrators at any time without affecting or delaying the proceedings. . . . the Board of Arbitration . . . shall continue to meet without unnecessary delay until all of the evidence and arguments have been received and heard and the award rendered. . . . The decision of a majority of the Board of Arbitration . . . shall be final and binding on the parties to this agreement."

■ The submission agreement was the charter for the entire arbitration proceedings, and its end purpose was a speedy award agreed upon by a majority of the arbitrators. The arbitrators, having accepted appointment, were bound by its terms. It is hardly conceivable that the parties intended a situation which would permit the arbitration agreement to be terminated or nullified by the arbitrators, without notice to

407

or the consent of the parties. This interpretation is buttressed by the December 17, 1958, letter of Christianson, the chairman, and his subsequent actions, which show that he did not consider the board was terminated and dissolved.

There is no suggestion in the record of any fraud or misconduct on the part of the original arbitrators. Considering, as true, the allegation of the unanimous agreement of the board to dissolve, we find no authority in the agreement for the arbitrators, or for either party, to revoke or terminate the agreement prior to the signing of the award. We conclude that the board exceeded its powers, and the action taken by it to terminate the arbitration was a nullity.

The complaint alleges that it was a denial of due process for the substitute arbitrator to be one who was a member of the Union, with a financial stake in the arbitration subject matter, and standing directly to benefit from any increase in wages and fringe benefits allowed by the award. The cases cited are not persuasive. It is generally held that an arbitrator must possess the judicial qualifications of fairness, disinterestedness and impartiality. Consequently, the existence of any facts which may operate to affect the impartiality of arbitrators, providing such facts are unknown to the party adversely affected, will render such arbitrators incompetent to make a valid award. 6 C.J.S. 186, 187.

We believe the submission agreement clearly indicates that the party-appointed arbitrators may be partisan representatives of each side—hence, the selection by the partisan arbitrators of an "Impartial Arbitrator and Chairman." This is further indicated by the right of substitution "of their respective arbitrators," and each party shall pay the expense of "its arbitrator." West Towns appointed its president and general manager to act as "its arbitrator."

408

Apparently, there was no concealment as to his official status, because the exhibits uniformly carry his official title when referring to Evan J. McIlraith. As Thomas Shields was employed by plaintiff as a bus operator, it seems clear that his interest in the subject matter of the controversy was not intended to be concealed. We think it reasonable for the Union to appoint one of its members as "its arbitrator." The submission agreement made no such prohibition. The system used in this case for the selection of arbitrators appears to be the general practice in employer-employee disputes. Its philosophy appears to be based upon the necessity of having on the board one who knows the facts and the business or operation involved, so that all facts favorable to his side may be fully presented by persons familiar with the problems involved. The only member of this type of board who has a duty to be impartial and open-minded is the chairman, in whose selection both parties have had a voice. In re Allen Bradley, 3 Labor Arbitration Reports 467.

The complaint alleges, even if the arbitration had not been terminated by the dissolution agreement of the arbitrators, it was a denial of due process for the substitute Union-appointed arbitrator to act and sign an award, when he had not heard the evidence and argument.

 It is the rule that all arbitrators must act and act together. (Smith v. Smith, 28 Ill. 56 (1862).) All must be present, or shall be given an opportunity to be present, at each and every meeting, equally, whether the meeting be for the hearing of evidence, arguments of the parties, or for consultation or determination of the award. This is so, even when it is stated in the agreement of submission that a majority award shall be valid. (Jones v. Bishop, 218 Ill. App. 318, 327, 328 (1920); 2 R. C. L. 384; Blin v. Hay, 2

Tyler (Vt.) 304 (1803).) Unless there is a distinct and unequivocal waiver, the absence of one of the arbitrators from the hearing is a valid ground for setting aside the award. 3 Am. Jur. 930, § 103.

 The Union had a right to have its appointed arbitrator present at all stages of the proceedings, but this was a right that it could waive. After a case has been heard, argued and considered, we believe a substitution at that point of a party-appointed arbitrator (under a substitution at any time agreement) does not prejudice the other party to the agreement.

 The substitution by the Union of its appointed arbitrator, after the hearings were concluded, was a distinct and unequivocal waiver of its right to a "full hearing" by a full board. Both parties were entitled to a literal interpretation of the provision for substituting "their respective arbitrators at any time without affecting or delaying the proceedings," and if the Union was satisfied to have "their arbitrator" participate in making an award without having been present during prior proceedings, we fail to see any prejudice to West Towns.

 It is alleged insufficient notice was given of the December 19, 1958, meeting of the reconstructed board at Christianson's office. It is undisputed that a telegram to McIlraith was received on the morning of December 19 at the West Towns company office, of which he was president and general manager. This does appear to be short notice but, as McIlraith was out of the jurisdiction and in Florida, we do not believe that West Towns was prejudiced. The appointment of an impartial arbitrator, with a majority decision provision, must have been intended by the parties to preclude either of the party-appointed arbitrators from nullifying the purposes of the arbitration agreement and preventing a final award. If an arbitrator, seeking to serve his own interest or those of

410

the party naming him, may nullify the proceedings at the last moment, no award could be reached in any case, even though the majority decision was to be binding. Necessarily, the parties must have contemplated the avoidance of a frustrated arbitration. It follows that the absence of McIlraith from the jurisdiction could not nullify the authority of the impartial arbitrator and the substitute Union-appointed arbitrator to agree upon a majority award. His presence, even if he dissented, would not have prevented a majority award. If it be conceded that McIlraith's previously planned departure on the morning of December 18, for an extended period of time, was in good faith, it must be concluded that this was a distinct waiver of West Towns' right to a "full hearing" by a full board.

■■ Although the terms of the award are retroactive to June 1, 1958, it contains no termination date. West Towns contends this is fatal, because certainty is an essential and indispensable element to the validity of an award. (Ingraham v. Whitmore, 75 Ill. 24; Alfred v. Kankakee & S. W. R. Co., 92 Ill. 609; Mercury Oil Refining Co. v. Oil Workers Int. Union, CIO, 187 F.2d 980.) The previous supplemental agreements were effective for one or two year periods. The seventh supplemental agreement, prepared by the Union upon its acceptance of the award, was for a one year period, of which seven months had run. This was a reasonable inference from the language of the award, together with the periods previously used. Technical and critical nicety is not required, and if there is a reasonable certainty to a common intent, it is sufficient. (3 Am. Jur. 947; 6 C.J.S. 231.) No matter of substance was left open for future dispute or litigation. In this instance, the award was capable of being understood and carried into specific execution with a reasonable certainty, and the lack of a termination date was not sufficient to vitiate the award.

411

In view of the greatly increased use of labor-management arbitration, we believe an award should be construed liberally under the specific language of the submission agreement and applicable statutes, with a view to favor its validity. (In re Duluth, Missabe and Iron Range Ry. Co., 124 F. Supp. 923 (1954).) An award should not be set aside in the absence of a clear showing that the award was not within the spirit and provisions of the submission agreement. Every intendment is indulged in favor of the award, and it is subject to impeachment only in a clear case. (International Ass'n of Machinists v. Bergen Avenue Bus Owners Ass'n, 67 A.2d 362 (1949).) The complaint of West Towns does not present such a case.

We are of the opinion that the judgment of the trial court was correct. For the reasons given, it is affirmed.

Affirmed.

BURMAN, J., concurs.

KILEY, P. J., took no part.