**AETNA CASUALTY &
SURETY COMPANY**

v.

**Thomas A. GRABBERT.**

**No. 89–253–Appeal.**

Supreme Court of Rhode Island.

April 23, 1991.

Michael G. Sarli, Mark C. Hadden, Michael R. DeLuca, Gidley, Lovegreen & Sarli, Providence, for plaintiff.

Lauren E. Jones, Jones Associates, Providence, John A. Thompson, Cranston, for defendant.

Ronald J. Resmini, Providence, Amicus Curiae.

## OPINION

SHEA, Justice.

This matter comes before the Supreme Court on Thomas A. Grabbert's appeal from a judgment of the Superior Court vacating an arbitration award granting him $32,500 plus 34 percent interest and costs. The total award, exclusive of costs, was $43,550. We reverse.

The facts in this matter are not in dispute. On February 16, 1985, Thomas A. Grabbert (Grabbert) was involved in an automobile accident with an uninsured motorist, as a result of which he sustained personal injuries. Grabbert made a claim under the uninsured-motorist provision of his automobile-insurance policy with Aetna Casualty & Surety Company (Aetna). The parties failed to reach a satisfactory settlement, and Grabbert requested that the dispute be submitted to arbitration pursuant to the arbitration provision of the insurance policy. The arbitration provision provided:

"If we and a *covered person* do not agree:

    1. Whether that person is legally entitled to recover damages from the owner or operator of an *uninsured motor vehicle;* or

    2. on the amount of damages;

either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will:

    1. Pay the expenses it incurs; and

    2. Bear the expense of the third arbitrator equally.

"Unless both parties agree otherwise, arbitration will take place in the county and state in which the *covered person* lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding. However, either party may make a written demand for a trial if the amount of damages awarded is greater than the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which *your covered auto* is principally garaged. If this demand is not made within 60 days of the arbitrators' decision, the amount of damages awarded by the arbitrators will be binding."

The dispute proceeded to arbitration. The parties each appointed an arbitrator, and the two party-appointed arbitrators selected a third arbitrator to complete the tripartite arbitration panel. Aetna appointed James McKenna (McKenna) as its arbitrator, and Grabbert appointed Ronald J. Resmini (Resmini or party-appointed arbitrator).[1] McKenna and Resmini selected W. Kenneth O'Donnell (O'Donnell) as the third arbitrator.

---

1. Resmini was allowed to file an amicus curiae brief and present oral argument before the court.

On December 16, 1987, O'Donnell issued the unanimous arbitrators' award. The arbitrators awarded Grabbert $32,500 plus 34 percent interest and costs. The total award, exclusive of costs, was $43,550. On December 31, 1987, Grabbert's counsel, John Andrew Thompson (Thompson), requested through Aetna's counsel that the insurer pay Grabbert's arbitration costs as awarded by the arbitrators. These costs were listed as $4,355 for his party-appointed arbitrator's fee and $100 for Grabbert's expense in initiating the arbitration. In response, Aetna's counsel requested on January 5, 1988, that Thompson forward a detailed copy of the party-appointed arbitrator's bill for review.

It was significant that Grabbert's party-appointed arbitrator's bill for $4,355 was exactly 10 percent of the award. The party-appointed arbitrator and Thompson each stated at separate depositions that no agreement concerning the arbitrator's fee existed prior to the award. However, the party-appointed arbitrator acknowledged that it was his practice to charge a contingent fee of 10 percent of an award. He said that when no award was made, he would not receive payment for his services.

Sometime after Thompson's request of Aetna to pay Grabbert's arbitration costs but prior to his sending Aetna's counsel a copy of the party-appointed arbitrator's bill, Thompson telephoned the arbitrator to express his concern about the amount of the bill. The party-appointed arbitrator and Thompson concur that even at this late date they still had not agreed upon the arbitrator's fee. Both agree that the party-appointed arbitrator's fee had not been a topic of conversation up until this point. The party-appointed arbitrator testified that during this telephone conversation he agreed to reduce his bill from $4,355 to $435, under the guise of a typographical error, because of the apparent financial situation of both Thompson and Grabbert. He stated:

"In the course of the conversation, he indicated to me, you know, that his client had financial difficulties and it was kind of the understanding that or clear to me that the attorney's financial situation certainly wasn't significant and that any money that was going to be paid apparently to me may have been coming out of whatever fee that he was receiving on it. So, based on that conversation I had with him, again I arbitrarily just took another form and charged him something significantly less and indicated to him that in my conversation with him, that for the record which was treated as a typographical error, and that's how I left it with him. My feeling on that is for years I did things for a lot of fellows and I didn't get anything or little to nothing out of it, and the time I spent answering things or over the phone for him I don't get anything, and for me, it was just another form of charity. That didn't really bother me especially in examining the person that I was dealing with, so I didn't have any trouble, although there is a tremendous difference between the first bill and the second bill."

Thompson went along with the party-appointed arbitrator's suggestion to treat the first bill as a typographical error, and Thompson later informed Aetna's counsel of such error in a letter dated January 14, 1988. The letter stated that the correct amount of the bill was $435. Thompson explained in the letter that the fact that the party-appointed arbitrator had spent only four hours at the arbitration hearing and deliberated for "a couple hours" highlighted the obviousness that a typographical mistake had been made.

On January 18, 1988, Aetna's counsel notified Thompson by letter that Aetna would not pay Grabbert's party-appointed arbitrator's fee. This letter specifically referred to the language in the insurance policy that provided that each party must pay the expenses it incurs in the arbitration, including the expense of its own arbitrator, and that the expense of the third arbitrator was to be divided equally. Aetna's counsel contended that the arbitrators were not free to ignore this contractual language in awarding costs to Grabbert. Moreover, by the same January 18, 1988 letter, Aetna's counsel also notified Thompson of Aetna's intention to demand a trial

by jury on the issue of damages under the terms of the insurance policy whereby either party may exercise this option if the arbitrators' award exceeds the financial-responsibility limit of the state in which the covered auto was principally garaged. The arbitrators' award of $32,500 plus 34 percent interest and costs exceeded Rhode Island's financial-responsibility limit in 1985 of $25,000.

On January 19, 1988, Aetna filed a complaint in Superior Court demanding a trial by jury on the issue of damages, claiming that the arbitrators' award was nonbinding because it exceeded Rhode Island's statutory limit on awards and arguing that Grabbert's claims should be denied. Subsequent to Aetna's filing its complaint, this court rendered its decision in *Pepin v. American Universal Insurance Co.*, 540 A.2d 21 (R.I.1988), on April 20, 1988, in which we held that arbitration-escape clauses such as the one relied upon by Aetna in its complaint were unenforceable as against public policy. On May 3, 1988, Grabbert, relying upon *Pepin*, filed an amended answer, contending that Aetna failed to state a claim upon which relief may be granted. Grabbert also raised several counterclaims at that time and demanded that an order confirming the arbitrators' award be entered pursuant to G.L. 1956 (1985 Reenactment) § 10-3-11. On June 17, 1988, Aetna filed its answer and affirmative defenses to Grabbert's counterclaims. Significantly, Aetna also amended its own complaint by seeking to vacate the arbitrators' award on the grounds that Grabbert's party-appointed arbitrator's contingent fee in the award created an evident partiality that mandated vacation of the award pursuant to § 10-3-12(2). Section 10-3-12(2) provides:

"In any of the following cases, said court must make an order vacating the award upon the application of any party to the arbitration:

\* \* \* \* \* \*

(2) Where there was evident partiality or corruption on the part of the arbitrators, or either of them."

On April 18, 1989, a hearing was held before the trial justice wherein both parties moved for summary judgment. The trial justice agreed with Aetna that the party-appointed arbitrator's contingent fee in the award created an evident partiality that mandated vacation of the award pursuant to § 10-3-12(2). He reasoned:

"It seems to the Court that one who acts as a judge whose remuneration is related to the amount of any judgment violates the tenets of any judicial function, and arbitration fee should be reimbursement for time spent performing the function of being a judge with your other two arbitrators, and that the award should consider only the evidence presented to the panel of arbitrators and a good faith effort to arrive at a fair judgment, that when one fee as an arbitrator is keyed to whether or not the person who suggested his name as the arbitrator recovers, and if recovery is made, that the fee arrangement related to a percentage of the award, it destroys in my judgment the validity of that award and strikes at the very heart of a fair and impartial panel considering damages.

\* \* \* \* \* \*

I do not countenance that fee arrangement. I think it's destructive of the system, and it undermines peoples' confidence in the system."

The trial justice then granted Aetna's motion for summary judgment and vacated the award. He also denied Grabbert's motion for summary judgment to confirm the award and denied Grabbert's Rule 12(b)(6) of the Superior Court Rules of Civil Procedure motion to dismiss. Judgment was entered on May 19, 1989, and Grabbert filed his appeal to this court on April 26, 1989.[2]

On appeal Grabbert argues that his party-appointed arbitrator's contingent fee in the award did not create an evident partiality that mandated vacation of the award

**2.** Grabbert's appeal was filed prematurely. Nevertheless, this procedural problem was later remedied by the trial court's entry of final judgment.

pursuant to § 10–3–12(2). He contends that the trial justice inappropriately required the party-appointed arbitrator to adhere to the same standards of neutrality as a judge. Grabbert also argues that even if the party-appointed arbitrator's contingent fee in the award was improper, Aetna failed to show that the award was affected by his improper conduct. Finally Grabbert claims that Aetna's challenge to the award was not timely filed pursuant to § 10–3–15.

The matter before us presents an issue of first impression concerning the propriety of a party-appointed arbitrator's contingnt fee in an award. During our review of the record and the issues presented, we have kept in mind the strong public policy in favor of the finality of arbitration awards. This strong public policy is reflected in the narrow grounds available to parties to vacate an award. We have consistently maintained that an award may be vacated only if it is "irrational" or "manifestly disregards the applicable contract provisions," *State v. National Ass'n. of Governmental Employees Local No. 79*, 544 A.2d 117 (R.I.1988), or if it falls within one of the four statutorily prescribed grounds in § 10–3–12. At the same time we have also remained cognizant of the need for public confidence and integrity in the arbitration process. Parties voluntarily contract to use arbitration as an expeditious and informal means of private dispute resolution, thereby avoiding litigation in the courts. Any impropriety that undermines public confidence in and the integrity of the arbitration process detracts from its legitimacy as an alternative method of private dispute resolution.

In the matter before us the public policy behind the finality of awards and the need for maintaining public confidence in and the integrity of the arbitration process collide. As a general rule we feel that no matter how desirable the finality of an arbitration award may be, it is more important that an award be rendered free from any improprieties that affect the award and that could destroy public confidence in and the integrity of the arbitration process. *Barcon Associates, Inc. v. Tri–County Asphalt Corp.*, 86 N.J. 179, 189, 430 A.2d 214,

219 (1981) (citing *Moshier v. Shear*, 102 Ill. 169, 174 (1881)). In applying that principle to this case, however, despite our belief that the party-appointed arbitrator's contingent fee gave him a direct financial interest in the award that was absolutely improper, we nevertheless believe that Aetna has failed to demonstrate the required causal nexus between the party-appointed arbitrator's improper conduct and the award that was ultimately decided upon. For that reason, we reverse the trial court's judgment that vacated the award.

■ As a starting point for our analysis, we agree with Grabbert that it would be inappropriate to require the party-appointed arbitrator to adhere to the same standard of neutrality as a judge. That standard ignores the practical realities of arbitration panels partly composed of party-appointed arbitrators. On this issue we concur with the view expressed by the Second Circuit in *International Produce, Inc. v. A/S Rosshavet*, 638 F.2d 548 (2nd Cir.), *cert. denied*, 451 U.S. 1017, 101 S.Ct. 3006, 69 L.Ed.2d 389 (1981), that

> "[t]he most sought-after arbitrators are those who are prominent and experienced members of the specific business community in which the dispute to be arbitrated arose. Since they are chosen precisely because of their involvement in that community, some degree of overlapping representation and interest inevitably results." *Id.* at 552.

We also cite with approval a similar position regarding the nonneutrality of party-appointed arbitrators espoused by Justice White in his concurring opinion in *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968), wherein he stated:

> "The Court does not decide today that arbitrators are to be held to the standards of judicial decorum of Article III judges, or indeed of any judges. It is often because they are men of affairs, not apart from but of the marketplace, that they are effective in their adjudicatory function. Cf. *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363

U.S. 574 [80 S.Ct. 1347, 4 L.Ed.2d 1409] (1960). This does not mean the judiciary must overlook outright chicanery in giving effect to their awards; that would be an abdication of our responsibility. But it does mean that arbitrators are not automatically disqualified by a business relationship with the parties before them if both parties are informed of the relationship in advance, or if they are unaware of the facts but the relationship is trivial." 393 U.S. at 150, 89 S.Ct. at 340, 21 L.Ed.2d at 305–06.

Finally we note that the parties who select party-appointed arbitrators also expect them to serve as nonneutrals. The reason the parties contract for the choice of their own arbitrator is to ensure that each party will have his or her "side" represented on the arbitration panel by a sympathetic member. *Astoria Medical Group v. Health Insurance Plan of Greater New York*, 11 N.Y.2d 128, 182 N.E.2d 85, 227 N.Y.S.2d 401 (1962). The parties expect their party-appointed arbitrators to provide expert guidance and knowledge to the neutral arbitrator, who may not be in a position to appreciate the finer points of the dispute and its history. *Id.* at 138, 182 N.E.2d at 90, 227 N.Y.S.2d at 408 (citing Lesser, Tripartite Boards or Single Arbitrators in Voluntary Labor Arbitration?, 5 Arb.J. [N.S.] 276, 279). Moreover, the parties would not consider the appointment of an arbitrator a valued right to be bargained for and litigated over if they contemplated no more than the appointment of a neutral arbitrator. *Id.*

We emphasize, however, that the trial court's use of an inappropriate standard in assessing the party-appointed arbitrator's conduct did not in and of itself constitute reversible error. Rather, the duty of the trial court was, and our duty is, to determine whether the party-appointed arbitrator's conduct was proper under the appropriate standard for a party-appointed arbitrator and, furthermore, whether any improper conduct affected the award that was ultimately decided upon.

In undertaking our duty, we acknowledge that the appropriate standard for assessing the conduct of party-appointed arbitrators is not given to precise formulations. Nevertheless, we think the Code of Ethics for Arbitrators in Commercial Disputes (Code of Ethics) offers sound guidance in this area. Canon VII of the Code of Ethics sets forth specific ethical considerations relating to party-appointed arbitrators. The Introductory Note to Canon VII recognizes that party-appointed arbitrators serve as nonneutrals, unless otherwise specified.

"In all arbitrations in which there are two or more party-appointed arbitrators, it is important for everyone concerned to know from the start whether the party-appointed arbitrators are expected to be neutrals or non-neutrals. *In such arbitrations, the two party-appointed arbitrators should be considered non-neutrals unless both parties inform the arbitrators that all three arbitrators are to be neutral, or, unless the contract, the applicable arbitration rules, or any governing law requires that all three arbitrators are to be neutral.*" (Emphasis added.)

It is the substantive provisions of Canon VII, however, that delineate the ethical obligations of party-appointed arbitrators in their capacity as nonneutrals. We think the following provisions of Canon VII are relevant to the matter before us:

"A. *Obligations Under Canon I:*

Non-neutral party-appointed arbitrators should observe all of the obligations of Canon I to uphold the integrity and fairness of the arbitration process, subject only to the following provisions:

(1) *Non-neutral arbitrators may be predisposed toward the party who appointed them but in all other respects are obligated to act in good faith and with integrity and fairness.* For example, non-neutral arbitrators should not engage in delaying tactics or harassment of any party or witness and should not knowingly make untrue or misleading statements to the other arbitrators.

\*    \*    \*    \*    \*    \*

"B. *Obligations Under Canon II:*

*Non-neutral party-appointed arbitrators should disclose to all parties, and to the other arbitrators, all interests and relationships which Canon II requires be disclosed.* Disclosure as required by Canon II is for the benefit not only of the party who appointed the non-neutral arbitrator, *but also for the benefit of the other parties and arbitrators so that they may know of any bias which may exist or appear to exist.* However, this obligation is subject to the following provisions:

(1) Disclosure by non-neutral arbitrators should be sufficient to describe the general nature and scope of any interest or relationship, but need not include as detailed information as is expected from persons appointed as neutral arbitrators.

\*    \*    \*    \*    \*    \*

"F.  *Obligations Under Canon VI:*

Non-neutral party-appointed arbitrators should observe all of the obligations of Canon VI to be faithful to the relationship of trust inherent in the office of arbitrator, subject only to the following provision:

(1) Non-neutral arbitrators are not subject to the provisions of Canon VI–D with respect to any payments by the party who appointed them." (Emphasis added.)

■■■ After our review of the record, we believe that Grabbert's party-appointed arbitrator has violated his ethical obligations under Canon I and Canon II of the Code of Ethics. It is undisputed that under Canon I a party-appointed arbitrator may be predisposed toward the arbitrator's appointor. However, we stress that this allowance does not relieve a party-appointed arbitrator of the ethical obligation to act in good faith and with integrity and fairness. Canon I states:

"Commercial arbitration is an important method for deciding many types of disputes. In order for commercial arbitration to be effective, there must be broad public confidence in the integrity and fairness of the process. *Therefore, an arbitrator has a responsibility not only*

to the parties but also to the process of arbitration itself, and must observe high standards of conduct so that the integrity and fairness of the process will be preserved." (Emphasis added.)

This view was also advocated by the Supreme Court of New Jersey in *Barcon Associates, Inc. v. Tri–County Asphalt Corp.*, 86 N.J. at 190–91, 430 A.2d at 219–20.

"While a party-designated arbitrator may approach the arbitration proceedings with some sympathy for the position of the party designating him, such an arbitrator must remain faithful to the obligation which rests upon him to maintain 'broad public confidence in the integrity and fairness of the [arbitration] process.' \* \* \* Thus, *all* arbitrators should 'conduct the proceedings in an evenhanded manner and treat all parties with equality and fairness at all stages of the proceedings.' \* \* \* *Most important, arbitrators 'should decide all matters justly, exercising independent judgment, and should not permit outside pressure to affect the decision.'* \* \* \* All arbitrators, party-designated and neutral, must exercise their responsibilities in a manner worthy of the great trust and power placed in them by the Legislature and courts of this State." (Emphasis added.)

We feel that Grabbert's party-appointed arbitrator has violated Canon I of the Code of Ethics because his contingent fee gave him a direct financial interest in the award that would tend to destroy public confidence in the integrity of the arbitration process. We are mindful in our assessment that a party-appointed arbitrator is not bound by the specific proscriptions of Canon VI–D relating to payments made to the party-appointed arbitrator by the arbitrator's appointor. However, we do not read this exemption to eliminate a party-appointed arbitrator's general ethical obligation under Canon I to uphold the integrity and fairness of the arbitration process. We think that the party-appointed arbitrator's contingent fee so clouds or overshadows the advocacy expected of the arbitra-

tor by vesting him with a direct financial interest in the award that such a fee arrangement cannot be permitted. On this point we are in complete agreement with the trial justice.

It is ironic that the party-appointed arbitrator himself acknowledged that his practice of charging a contingent fee in the award was thought inappropriate by other plaintiffs' party-appointed arbitrators. He testified:

"There are, I would say, that the majority of people that I have discussed it with would think that it's inappropriate for an arbitrator to charge a percentage of the award. I mean, I would think that percentagewise, I haven't discussed it with that many, but if I have discussed it with seven or eight, *I think I am the only one that believes it's appropriate.*" (Emphasis added.)

■ We also believe that the party-appointed arbitrator violated his ethical obligations under Canon II of the Code of Ethics by failing to disclose to Grabbert, Aetna, and the other two arbitrators his practice of charging a contingent fee in the award. Canon II requires that persons requested to serve as arbitrators should, before accepting, disclose any direct or indirect financial or personal interest in the outcome of the award. This ethical obligation is mitigated somewhat by Canon VIIB(1), which specifies that "[d]isclosure by non-neutral arbitrators should be sufficient to describe the general nature and scope of any interest or relationship, but need not include as detailed information as is expected from persons appointed as neutral arbitrators."

We think that Canon II, even as mitigated by Canon VIIB(1), required disclosure by the party-appointed arbitrator beyond that found in the contractual provision of the insurance policy that specified that each party was to pay for its own arbitrator. He should have disclosed the fact that it was his practice to charge a contingent fee in the award to all interested parties. We do not think it is overly speculative to assume that, had the party-appointed arbi-

trator disclosed his intention to charge a contingent fee in the award, Aetna would have challenged his qualifications to serve, relying upon his direct financial interest in the award.

■ Beyond these violations of the party-appointed arbitrator's ethical obligations under Canon I and Canon II of the Code of Ethics, we are also unpersuaded by the case law cited by Grabbert for the proposition that a party-appointed arbitrator's method of compensation is not grounds for vacating an otherwise valid award.[3] We believe these cases are distinguishable from the matter before us in that they involved party-appointed arbitrators with an *indirect* interest in the award. *West Towns Bus Co. v. Division 241, Etc.*, 26 Ill.App.2d 398, 168 N.E.2d 473 (1960), illustrates this distinction. In *West Towns Bus Co.*, the trial justice refused to vacate an award regarding wages and fringe benefits even though the union-appointed arbitrator was a member of the union and bargaining unit that benefited from the increased wages and fringe benefits. It is important to note that the trial justice based his decision upon the fact that all interested parties were aware of this relationship as required by the arbitration submission agreement. The trial justice therefore did not pass upon the propriety of the union-appointed arbitrator's indirect financial interest in the award.

In the matter before us, the very issue we must pass upon is the propriety of the party-appointed arbitrator's contingent fee in the award. In so doing, we find that the contingent fee gives him a direct financial interest in the award that extends far beyond the indirect financial interest enjoyed by the union-appointed arbitrator in *West Towns Bus Co.* This arbitrator benefited solely on the basis of his being the party-appointed arbitrator. Thus, if removed as the party-appointed arbitrator, he would have had no interest in the award. Conversely, the union-appointed arbitrator in *West Towns Bus Co.* benefited solely on the basis of his membership in the union

---

3. Aetna has failed to cite case law on this issue  or any other.

and bargaining unit, not on his presence as the union-appointed arbitrator. Thus, if removed as the union-appointed arbitrator, he would have retained the same interest in the award.

▉ Despite these findings, however, we must agree with Grabbert that the trial justice's decision to vacate the award should be reversed because Aetna failed to demonstrate the required causal nexus between the party-appointed arbitrator's improper conduct and the award ultimately decided upon. We recognize that evident partiality is an elusive concept for which no one has been able to articulate a precise legal standard. *International Brotherhood of Electrical Workers, Local Union No. 323 v. Coral Electric Corp.*, 104 F.R.D. 88, 89 (S.D.Fla.1985). Most courts that have addressed the issue have decided that a finding of evident partiality requires a showing of more than an appearance of bias but less than actual bias. *Apperson v. Fleet Carrier Corp.*, 879 F.2d 1344, 1358 (6th Cir.1989); *Local 814, International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America v. J & B Systems Installers & Moving, Inc.*, 878 F.2d 38, 40 (2nd Cir.1989); *Local 530, AFSCME, Council 15 v. City of New Haven*, 9 Conn.App. 260, 518 A.2d 941 (1986). The standard emerging from these decisions is that "evident partiality" will be found "where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." *Morelite Construction Corp. v. New York City District Council Carpenters Benefit Funds*, 748 F.2d 79, 84 (2nd Cir.1984). The burden of proving facts that would establish a reasonable impression of partiality rests with the party challenging an award. *Sheet Metal Workers International Association Local Union #420 v. Kinney Air Conditioning Co.*, 756 F.2d 742, 746 (9th Cir.1985).

If we were faced with the party-appointed arbitrator's contingent fee in the award standing alone without any additional considerations, we would be hard pressed not to find that a reasonable person would conclude that the party-appointed arbitrator was partial to Grabbert.[4] In our opinion, the only acceptable method of calculating an arbitrator's fee is on the basis of time worked. We feel that the party-appointed arbitrator's contingent fee in the award in this case creates an inherent partiality similar to that created by the father-son relationship challenged in *Morelite*. In *Morelite*, the Second Circuit addressed whether an evident partiality existed when the sole arbitrator of the dispute was the son of a vice-president of the international union whose local district union was a party to the arbitration. The Second Circuit emphasized that "[w]e know nothing more about the relationship between [the arbitrator and his father] except that the former is the latter's son" but still found that an evident partiality existed, based upon the uncontested relationship, because "reasonable people would have to believe [the relationship] provides strong evidence of partiality by the arbitrator." *Morelite*, 748 F.2d at 84–85.

The matter before us, however, must be distinguished from *Morelite* because we have factors in the case that would lead a reasonable person to believe that the party-appointed arbitrator was not improperly partial to Grabbert. The award in this case was a unanimous decision of three experienced arbitrators. Even discounting the party-appointed arbitrator's vote, the award was supported by a majority of the arbitration panelists. This was clearly not the case in *Morelite* because in that case it was a sole arbitrator who was challenged on the grounds of evident partiality.

Also, Aetna's failure to challenge the award relying upon the party-appointed arbitrator's alleged evident partiality until after our decision in *Pepin*—the challenge coming six months after the award was rendered—supports the conclusion that the arbitrator's improper conduct had little, if

---

**4.** Aetna has failed to present any evidence beyond speculation and its assertion in its brief that "it is simply not proper for an arbitrator to have a direct financial interest in the outcome of the award" that tends to show that the party-appointed arbitrator's improper conduct caused him to be partial to Grabbert.

any, direct effect on the award. Relying upon these considerations and on Grabbert's own lack of knowledge about his party-appointed arbitrator's contingent-fee arrangement, we believe it would be unfair to Grabbert to deny him the award and to force him to go through the arbitration process again.

Our conclusion is that the trial justice's decision to vacate the award should be reversed because Aetna failed to demonstrate the required causal nexus between the party-appointed arbitrator's improper conduct and the award that was ultimately decided upon. Having reached that conclusion, we find it unnecessary to address Grabbert's final claim that Aetna's challenge to the award was time barred by § 10-3-15.

For these reasons Grabbert's appeal is sustained, the judgment entered in the trial court is vacated, and the papers of the case are remanded to the Superior Court for entry of judgment affirming the arbitration award.