DECISION
Before the Court are the petitions of the City of Central Falls (City) and Central Falls Fire Fighters, Local 1485, I.A.F.F. (Union). The City moves this Court to vacate and stay the arbitration award. The Union objects to the motion to vacate. This matter is before the Court pursuant to G.L. 1956 § 28-9-18.
 FACTS AND TRAVEL
When Captain James Galligan and Private David Brosseau retired from the City of Central Falls Fire Department in the early months of 2001, each believed he was entitled, under the Collective Bargaining Agreement (CBA) between the City and Union, to payment for accumulated vacation time. Both fire fighters had retired directly from having been on Injured On Duty Leave (I.O.D.). Captain Galligan retired effective March 1, 2001, having accumulated 45 vacation days. Private Brosseau retired effective February 1, 2001, having accumulated 56 vacation days. Both of these figures include days that the two fire fighters accumulated while on I.O.D. At the start of his I.O.D, Captain Galligan had 19 days vacation time while Private Brosseau had eight days of accumulated vacation time.
Disputes between the Union and the City are governed by a CBA, and this particular dispute was governed by the 2000-2001 Agreement (Agreement). Prior to this incident with Galligan and Brosseau, the Union and the City had been unable to negotiate a successor to the 1997-1998 Agreement. Because of the stalemate, the issue was submitted to interest Arbitration, as required by state law. Following the interest Arbitration award, the parties negotiated four one-year successor agreements. (1998-1999, 1999-2000, 2000-2001, 2001-2002). Galligan and Brosseau retired during the 2000-2001 Agreement.
As a result of the interest Arbitration, Article 12, § 1(g) was altered to read:
 "All vacation time should be used and discharged in the same calendar year, except for employees who are on injured on duty leave (I.O.D.) or sick leave. Their unused vacation shall be discharged within one (1) year upon completion of their I.O.D. or sick leave, or it shall be automatically forfeited."
The City argued that under the revised language of Article 12, § 1 (g), vacation time contained in the Agreement does not accrue. The City asserts that the vacation time must be discharged in the same calendar year, or it will be forfeited. The Union argues that the payment for the vacation time upon retirement is the only interpretation that "meets the normal application of reason and equity . . . ." Arbitration Decision at 4. It further argues the payment of the vacation time to disabled members upon retirement has been the City's established past practice, and that the CBA does not contain a specific provision prohibiting such payment.
After the City refused to pay the accrued vacation time, the Union filed a grievance. The Arbitrator held a hearing on October 25, 2001, and rendered a decision on January 25, 2002, sustaining the grievances and ordering the City to pay Galligan and Brousseau for all accrued vacation at the time of their retirement. The Arbitrator denied the Union's request for interest on the award. The City filed a petition to vacate and stay the implementation of the arbitration award on March 6, 2002.
 STANDARD OF REVIEW
Confirmation of an arbitration award is governed by 1956 G.L. §10-3-11, which states:
 "At any time within one year after the award is made, any party to the arbitration may apply to the court for an order confirming the award, and thereupon the court must grant the order confirming the award unless the award is vacated, modified or corrected, as prescribed in §§ 10-3-12-10-3-14. Notice in writing of the application shall be served upon the adverse party or his or her attorney ten (10) days before the hearing on the application."
Vacating an arbitration award is governed by 1956 G.L. § 10-3-12
which provides:
 "In any of the following cases, the court must make an order vacating the award upon the application of any party to the arbitration:
 (1) Where the award was procured by corruption, fraud, or undue means.
 (2) Where there was evident partiality or corruption on the part of the arbitrators, or either of them.
 (3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in hearing legally immaterial evidence, or refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior by which the rights of any party have been substantially prejudiced.
 (4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."
This Court's "authority to review the merits of an arbitration award is very limited." Rhode Island Brotherhood of Correctional Officers v. StateDepartment of Correction, 707 A.2d 1229, 1234 (R.I. 1998) (citations omitted). This Court must determine "whether the arbitrator has resolved a grievance by considering the proper sources, such as the contract in effect between the two parties." Town of Coventry v. Turco, 574 A.2d 143, 146 (R.I. 1990) (quoting State v. National Association of GovernmentEmployees Local No. 79, 544 A.2d 117, 119 (R.I. 1988) (citing RhodeIsland Council 94 v. State, 456 A.2d 771, 773 (R.I. 1983)). The general rule is that "[a]bsent a manifest disregard of a contractual provision or a completely irrational result, the award will be upheld." Rhode IslandBrotherhood of Correctional Officers v. State Department of Corrections,
707 A.2d at 1234 (quoting Town of Coventry v. Turco, 574 A.2d at 146). The Court will uphold the arbitration award "so long as an arbitrator's award `draws its essence' from the contract and is based on a `passably plausible' interpretation of the contract . . . ." Town of Coventry v.Turco, 574 A.2d at 146 (quoting Jacinto v. Egan, 120 R.I. 907, 912,391 A.2d 1173, 1176 (1978)) (citations omitted). Furthermore, the Court will vacate the arbitration award if the arbitrator "manifestly disregarded a contractual provision or reached an irrational result . . . ." Id. In reaching a decision, the Court "may not reconsider the merits of an award despite allegations that it rests upon errors in fact or on a misrepresentation of the contract." Rhode Island Council 94, AFSCME,AFL-CIO v. State, 714 A.2d 584, 588 (R.I. 1998) (citations omitted). The Court's role "is to determine whether the arbitrator has rationally resolved the grievance by considering the contract between the parties and the circumstances out of which come the so-called common law of shop." Id. at 589 (citation omitted).
Finally, " . . . the courts look with disfavor on efforts to overturn arbitration awards and thereby frustrate the arbitration process. Only in cases in which an award is so tainted by impropriety or irrationality that the integrity of the process is compromised should courts intervene." Prudential Property and Casualty Insurance Company v. JoyceM. Flynn, 687 A.2d 440, 441 (R.I. 1996) (quoting Aetna Casualty Surety, Co. v. Grabbert, 590 A.2d 88, 92 (R.I. 1991)). Because "public policy favors finality of arbitration awards . . . parties . . . are not allowed to circumvent an award by coming to the courts and arguing that the arbitrators misconstrued the contract or misapplied the law." Id. As long as the objecting party has ample opportunity to present evidence, then there is no abuse on the arbitrator's part. See Taylor et al v.Delta Electric Power, Inc., 741 A.2d 265, 267 (R.I. 1999).
 THE MOTION TO VACATE AND STAY ARBITRATION AWARD
The City argues that the arbitration award should be vacated citing the following reasons: (1) the Arbitrator's interpretation of Article 12, § 1(g) of the CBA is irrational, illogical, and a total derogation of the plain meaning of the agreement; (2) the clear language of the CBA does not provide for payment of unused vacation time to fire fighters who retire contiguous with their I.O.D. status; (3) the parties' intent to forfeit unused vacation time to fire fighters who retired while on I.O.D. status is manifest by the CBA's express provision granting employees benefits other than unused vacation time upon retirement; (4) any consideration of past practices in the Arbitrator's decision was irrelevant and inadmissible; and (5) the Arbitrator improperly relied on 1956 G.L § 45-19-1 and § 28-14-4 in awarding unused vacation pay to retiring fire fighters on I.O.D. status.
(1) The Arbitrator's Interpretation of the Language of Article12, § 1(g)
First, the City argues that the language in Article 12, § 1(g) is clear and unequivocal, and that the Arbitrator's finding of ambiguity is irrational and illogical. The Union responds that the Article is ambiguous and open to multiple interpretations. Presently, Article 12, § 1(g) reads:
 "All vacation time should be used and discharged in the same calendar year, except for employees who are on injured on duty leave (I.O.D.) or sick leave. Their unused vacation shall be discharged within one (1) year upon completion of their I.O.D. or sick leave, or it shall be automatically forfeited."
The City argues its meaning is unambiguous. "[V]acation time does not accrue; it must be used and discharged within the same calendar year. Employees on I.O.D. status, however, have one year in which to discharge their unused vacation time, else their vacation time is completely forfeited." Plaintiff's Memo at at 4. The Union, however, argues that this interpretation is dependent on an employee returning to work, and that the forfeiture clause "only becomes operative after the expiration of the one year period after the employee has returned to work."Defendant's Memo at 7.
It is plain from the Article that if the employee returns to work, the vacation time must be discharged within one year, or it will be forfeited. It is not plain from Article 12, § 1(g) what happens when the employee does not return to work, and retires directly from I.O.D. status. In D.T.P. Inc. v. Red Bridge Properties, Inc, the Rhode Island Supreme Court stated, "A contract is ambiguous if, in light of our rules of contract interpretation, it is reasonably susceptible of different constructions." 576 A.2d 1377, 1381(quoting Westinghouse BroadcastingCo., 122 R.I. at 579, 410 A.2d at 991). The Arbitrator concluded:
 "Under the circumstances where an employee completes an I.O.D. and is immediately placed on retirement, there is, obviously, no time within which to discharge any accumulated vacation time. It is difficult for me to believe that this was the intention of the parties when it was originally negotiated." Arbitration Decision at 6.
Consequently, the Article is subject to two plausible explanations: (1) it covers all workers including those who do not return to full time active duty; or (2) because of the lack of express language, it is ambiguous as to whether it applies to workers who retire directly from I.O.D. status. Consequently, the Arbitrator's determination that the contract was unclear with regard to the situation of the returning workers is a "passably plausible" interpretation and not an irrational one.
(2) Payment of Unused Vacation Time
The City further argues that the revision of Article 12, § 1 (g) made the intent of the City to eliminate the practice of paying accrued vacation time to retiring employees known and obvious to all parties. The City argues, that the phrase "automatically forfeited" was added to Article 12, § 1 (g) during interest arbitration to express the City's desire to end the practice of paying retiring employees unused vacation time. Plaintiff's Memo at 6. The Union responds by arguing that the new language does not reveal any intent on the part of the City to end the practice of paying retiring employees vacation time, and the revision was simply a change in terminology to clarify the existing meaning of the Article. Defendant's Memo at 10.
The Arbitrator concluded the revision "has no material effect on the provision as previously expressed, in my opinion, nor does it clarify what was, and still is, unclear language as to the full intent of the article." Arbitration Decision at 5. The revised language still does not expressly address the question of the vacation time of employees who retire directly from I.O.D. The Arbitrator concluded:
 "[the] original language absent the additional words of the award is as "clear" as the new language. Must
means must, and the addition of the words "or it must be forfeited" is superfluous. The problem with the language of Article 12, is not whether vacation will be forfeited, but indeed, when it will be forfeited." Arbitration Decision at 5-6 (emphasis original).
Consequently, the revised Article is still susceptible to multiple interpretations. See D.T.P. Inc. 576 A.2d at 1381. Consequently, the Arbitrator's analysis is again "passably plausible" interpretation of the agreement.
(3) The Express Provision Granting Employee Benefits Other thanUnused Vacation Time upon Retirement
The City further argues that applying the maxim of statutory interpretation, inclusio unius est exclusio alterious (the inclusion of one is the exclusion of another), compels the Arbitrator to conclude that it was the parties' intent under Article 12, § 1 (g) to forfeit unused vacation time upon retirement. Although the CBA does not have express language concerning what happens to the vacation time when an employee retires directly from I.O.D., it does have an express provision that specifies upon "retirement or death from the Central Falls Fire Department the employee or his beneficiaries shall be reimbursed in cash for all unused sick leave." Article 14, § 3 (b). Essentially, the City argues, that the omission of the express language makes the intent of the Article 12, § 1 (g) clear, and not ambiguous as the Arbitrator concluded. The City argues that "it is not coincidental, therefore, that unused vacation time is conspicuously absent from the CBA's retirement provisions." Plaintiff's Memo at 8.
It is true that "in determining whether a contract is clear and unambiguous, the document must be viewed in its entirety and its language be given its plain, ordinary, and usual meaning." Rotelli v. Catanzaro,686 A.2d 91, 95 (R.I. 1996) (quoting Paradis v. Greater ProvidenceDeposit Corp, 651 A.2d 738, 741 (R.I. 1994)). However, here the City is asking this Court to make a significant jump. The CBA contains 28 Articles, and this type of interpretation would require the Arbitrator and the Court not only to interpret the meaning of words on the pages but also intuit the meaning of the words which are absent from each Article. Furthermore, sick leave and vacation time are two different matters dealt with in different Articles, and nothing compels the Arbitrator or this Court to conclude each should be analyzed as reflexive of the other. Consequently, the Arbitrator's focus and analysis of the lack of express language in Article 12, is again a "passably plausible" interpretation of the contract which "draws its essence" from the Agreement.
(4) The Arbitrator's Consideration of Past Practices
The City further argues that the Arbitrator should not have considered evidence of past practices in making the decision because (1) the past practices under different CBAs were irrelevant to the current situation; and (2) the Arbitrator was without authority to consider past practice based both on precedent and R.I.G.L. § 28-9-27. The Union responds that under § 28-9-27, the Arbitrator has the authority to consider past practices. Furthermore, the Union states that the Arbitrator "did not state that he found that there was a past practice that existed in this case and that he was therefore going to continue the past practice. His decision merely stated that he considered the issue." Defendant's Memo at 12.
Under § 28-9-27(a), the Arbitrator has the authority to look into past practice in two instances: (1) the CBA does not contain an express provision that is the subject of the grievance; or (2) the CBA contains a provision that is unclear and ambiguous. The Arbitrator concluded that "the CBA does not contain an express provision that is the subject of an employee's retirement that is contiguous with his/her completion of I.O.D." Arbitration Decision at 6-7. In response, the City again argues that the provision in Article 12, is clear. Furthermore, it argues that this past practice was irrelevant because it was under a different CBA and involved employees "most of whom were non-classified and not members of the Central Falls Fire Department." Plaintiff's Memo at 10. Yet, if the Arbitrator reasonably concluded that the provision was unclear, he had the statutory authority to consider past practice under §28-9-27(a).
The City also argues that the Arbitrator exceeded his authority by considering the past practices in the absence of a sufficiently clear past practice provision. See Smithfield v. Local 2050, 707A.2d 260 (R.I. 1998) (holding that the arbitrator exceeded his authority when he referred to a past practice without a sufficiently clear past practice provision). The Arbitrator argues that the Management Rights Clause provides an unambiguous past practice provision. The provision reads:
 "The City retains the right to issue rules and regulations governing the internal conduct of the Fire Department as provided by law, except as modified by the terms of the Collective Bargaining Agreement and the duly established past practice of the parties." Arbitration Decision at 6.
The Smithfield Court objected to the arbitrator's reliance on a very similar clause noting that "the reference to past practices was not intended as a general acceptance of any past practices between the union and the town, but was merely a limitation on the rights of management." 707 A.2d at 263. However, in this case, there is no evidence that the Arbitrator based his decision on a past practice and was planning on incorporating that practice into the CBA. Furthermore, the Smithfield
Court noted "the complete absence of any evidence to show that the town of Smithfield was ever aware of or that it in any other way ratified the alleged past practice of permitting paid leave to union officers to prepare for arbitrations." 707 A.2d at 263. In this case, the City has acknowledged that at least in some cases, it was the practice to pay officers who retired directly from I.O.D. status. Furthermore, the Smithfield case was decided in 1998. Section 28-9-27 was adopted after the case, and it enlarges the arbitrator's authority to consider past practices if the CBA (1) does not contain an express provision that is the subject of the grievance; (2) the CBA contains a provision that is unclear and ambiguous.
The Arbitrator did not exceed his authority when he considered past practice. Under § 28-9-27(a), the Arbitrator had the statutory authority to consider past practice, if as in the instant case, the CBA contains a provision that is unclear.
(5) The Arbitrator's Reliance on 1956 G.L § 45-19-1 and § 28-14-4
Finally, the City argues the Arbitrator's reliance on § 45-19-1 and § 28-14-4 is misplaced and unavailing. The City argues that neither statute applies to the instant case, and by relying on those statutes, the Arbitrator abused his authority. The Union argues that both statutes apply to the instant situation. In his decision, the Arbitrator stated,
 "[A]n arbitrator cannot always confine his authority to the `four corners of the Collective Bargaining Agreement,' convenient as that may be. However, one cannot ignore external law. It is my opinion that the issue in this matter is embraced by 45-19-1 of the RIGL and 28-14-4." Arbitration Decision at 7.
Section 45-19-1 outlines the relief for injured and deceased fire fighters and police officers. The City argues that this section applies exclusively to disabled employees who are on I.O.D. status, not to those who have voluntarily retired. In Webster v. Perrotta, the Rhode Island Supreme Court held that
 "[S]ection 45-19-1 is not a retirement act. It applies to a police officer or another enumerated individual who is `wholly or partially incapacitated by reason of injuries received or sickness contracted in performance of his or her duties' and who is entitled to like compensation and benefits, while he or she remains a member of the department." 774 A.2d 68, 80 (R.I. 2001).
The officers in Webster, however, had been retired for up to three decades and were seeking wages and benefits from the date of their retirements until the present. In the instant case, the fire fighters are seeking vacation benefits which they accrued while they were still on the force — not benefits that accrued after their retirement. The City argues that the Arbitrator "improperly permits this provision to provide continuing benefits beyond the period for which I.O.D. status extends, i.e. into retirement." Plaintiff's Memo at 16. The Arbitrator's award covers only benefits earned while two fire fighters were on the force both on active duty and I.O.D.
The City further argues that § 28-14-4 (b) does not apply. The section reads:
 "Whenever an employee is separated from the payroll of an employer after completing at least one year of service, any vacation pay accrued by collective bargaining, company policy, or other agreement between employer and employee becomes wages and is payable in full or on a prorated basis with all other due wages on the next regular payday for the employee."
According to the City, since under the current CBA, vacation time does not accrue, this statute does not apply in the instant case. In arguing that § 28-14-4 is inapplicable, the City relies on its previous arguments on the clarity of the language and intent of Article 12, § 1 (g). Essentially, the City is arguing because Article 12, § 1 (g) is clear and unequivocal about the accrual of vacation time, § 28-14-4
does not apply. Yet, the Arbitrator reasonably concluded that the contract was open to interpretation with regard to the matter of vacation time. Contract language which is susceptible to multiple interpretations is unclear. See D.T.P. Inc., 576 A.2d at 1381. Consequently, the Arbitrator did not abuse his authority by considering either § 45-19-1
or § 28-14-4 in making his decision.
 CONCLUSION
After a thorough review of the Arbitrator's decision and consideration of the memoranda submitted by the parties, this Court confirms the arbitration award issued by Arbitrator Venditto. The Court finds that Arbitrator Venditto's decision "draws its essence" from the Agreement between the parties and is based on a "passably plausible" interpretation of that Agreement. The City has not met its burden of presenting sufficient evidence for this Court to find Arbitrator Venditto "manifestly disregarded" the Agreement, reached an "irrational result," or exceeded his authority as the City argues he did. Therefore, the City's motion to vacate the arbitration award is denied.