**V.S. HASEOTES & SONS, L.P., by and through its general partners Lily BENTAS and Byron Haseotes**

v.

**Demetrios HASEOTES et al.**

**No. 2002–58–Appeal.**

Supreme Court of Rhode Island.

April 15, 2003.

Robert D. Wieck, Denean M. Russo, Providence, for Plaintiff.

Thomas S. Fitzpatrick, Boston, MA, John B. Harwood, Providence, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, and GOLDBERG, JJ.

1. The defendants, Demetrios Haseotes and George Haseotes, comprise the remaining general partners; however, Lily and Byron have prosecuted this action, asserting that

## OPINION

PER CURIAM.

This case came before the Supreme Court on February 4, 2003, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After hearing the arguments of counsel and reviewing the memoranda of the parties, we are satisfied that cause has not been shown. Accordingly, we shall decide the appeal at this time.

The plaintiff, V.S. Haseotes & Sons, L.P. (partnership or plaintiff), is a Rhode Island limited partnership consisting of Lily Bentas (Lily), Byron Haseotes (Byron),[1] and the defendants, Demetrios Haseotes (Demetrios or defendant) and George Haseotes (George), all of whom are general partners.[2] The plaintiff is before the Supreme Court on appeal from a judgment denying its motion to vacate an arbitration award and confirming the award. The plaintiff contends that the hearing justice erred in finding that there was no evident partiality or bias on the part of the arbitrator.

## Background

The partners in the plaintiff partnership are siblings who also are the principal shareholders of Cumberland Farms, Inc. (Cumberland). In 1986, Demetrios, who was the sole owner of three oil tankers, began to explore the acquisition of an oil refinery. Ultimately, and with the concurrence of his sibling shareholders, the refinery operation was acquired by Demetrios as a wholly-owned separate entity; however, Cumberland loaned significant sums of money toward its acquisition and rehabilitation. Demetrios also contributed funds

defendants have failed to repay loans owed by them to the partnership.

2. Each of the general partners has an equal 25 percent interest in the partnership.

toward the refinery acquisition and rehabilitation, ultimately refinancing his oil tankers and lending the proceeds to the refinery operation. When Cumberland's finances became precarious, its major creditor stepped in and forced Demetrios out as chief executive officer. Additionally, Demetrios was required to lend to Cumberland most of the profit distributions payable to him for the years 1989 and 1990. These loans formed the basis of the bankruptcy claim.

In 1992, Cumberland sought a voluntary reorganization in federal bankruptcy court pursuant to Chapter 11 of the Bankruptcy Code. By 1998, Cumberland's debt to its creditors had been repaid and Demetrios asserted a claim for repayment of the loans he made to Cumberland from his shareholder distributions. Cumberland, although not disputing its indebtedness to Demetrios, sought a setoff arising from an alleged breach by Demetrios of his fiduciary duty of loyalty to the corporation.[3] The bankruptcy judge agreed with Cumberland and its debt to Demetrios was setoff against Cumberland's claims for breach of fiduciary duty to the corporation. Significantly, Demetrios was represented in the bankruptcy proceeding by the Massachusetts law firm of Craig and McCauley, P.C.; attorney William R. Moorman, Jr. (William Moorman) is a partner in that firm.

On another front in this internecine financial war within the Haseotes family, Lily and Byron, on behalf of the partnership, sought to collect debts that Demetrios and George owed to plaintiff arising from partnership loans to the general partners. Demetrios asserted that the amounts he invested in the refinery after refinancing his oil tankers should offset his partnership debt. The partnership agreement provided for arbitration of this dispute, and in accordance with the rules and procedures of the American Arbitration Association, Carla Cox (Cox), a Massachusetts attorney, was appointed as arbitrator. Cox is a partner in the law firm of Handly, Cox & Moorman, P.C. One of her law partners is John D. Moorman, the brother of William Moorman, a partner in Craig and McCauley, P.C., the firm that represented Demetrios before the Bankruptcy Court. The brothers Moorman are the genesis of this dispute.

To alert the arbitrator to the existence of any potential conflict of interest, both parties to the arbitration were requested to supply detailed information concerning the parties, their witnesses, and the claims asserted in the arbitration. But neither side brought to Cox's attention the fact that her law partner's brother was a member of the law firm that represented Demetrios in the bankruptcy claim. The plaintiff, which failed to raise what it now contends is a significant conflict of interest, asserts that the arbitrator was on constructive notice of the conflict because, during prehearing proceedings, transcripts from the bankruptcy proceeding that identified the law firm of Craig and McCauley, P.C., as counsel for Demetrios were provided to the arbitrator. It was only after the arbitrator issued her award, clarification and final order that the partnership discovered that William Moorman was the brother of arbitrator Cox's law partner.

The arbitrator found that there was no specific agreement about repayment of the loans made to the general partners and,

---

**3.** According to the decision of the bankruptcy judge, "Cumberland contend[ed] [Demetrios] Haseotes was derelict in his loyalty obligation when he caused his wholly-owned corporation to make payments on indebtedness owed to him" while this same corporation owed a much larger debt to Cumberland and "it was primarily the nonpayment of this debt that brought about Cumberland's Chapter 11 filing."

further, that the other partners did not object in a timely manner to Demetrios's offsetting his partnership loans against the tanker refinancing for the refinery operation. The arbitrator ruled that all the partners agreed that it was in the best interest of the partnership for Demetrios to invest in the oil refinery venture, that plaintiff had given "equitable acquiescence" to the offset arrangement and that plaintiff was barred by laches from pursuing its claim. She also found that the claim against George was not made in good faith, and thus ordered Lily and Byron to personally reimburse the partnership for funds spent in furthering the claim against George and to pay his attorneys' fees.

The partnership, pursuant to G.L.1956 § 10–3–12(2),[4] filed a petition in Superior Court seeking to vacate the award, and asserted that the arbitrator's failure to disclose an improper relationship, coupled with what plaintiff characterized as an irrational and manifestly erroneous result, established evident partiality by the arbitrator to warrant vacating the award.

On December 11, 2001, the trial justice denied the petition to vacate the arbitrator's award, confirmed the award, and ordered Lily and Byron to reimburse the partnership for attorneys' fees and other expenses incurred in connection with the commencement and prosecution of the petition. He held that the partnership failed to produce any evidence suggesting that Cox knew that her law partner's brother had represented Demetrios in the bankruptcy proceeding. He found that the alleged relationship was trivial and could not be characterized as prejudicial to the partnership. The hearing justice concluded that nothing on the face of the arbitration award demonstrated evident partiality by the arbitrator. Consequently, the trial justice entered judgment confirming the award.

On appeal, plaintiff argues that actual knowledge by the arbitrator of the Moorman brothers was not necessary for a finding of evident partiality because constructive knowledge of the relationship can be imputed to Cox, based on the filing of the transcripts from the bankruptcy proceeding, which identified Craig and McCauley as counsel for Demetrios. Further, plaintiff alleges that this constructive knowledge of her law partner's relationship with Demetrios's former counsel, coupled with the irrational nature of the award, is sufficient to establish a causal nexus between the arbitrator's relationship and the award. The plaintiff argues that the finding of bad faith by the partnership in pursuing a claim against George was clearly wrong and that the arbitrator failed to make sufficient findings to support this conclusion. Further, plaintiff contends that the award is in conflict with findings of the Bankruptcy Court, and these disparate findings further demonstrate arbitrator bias.

---

**4.** General Laws 1956 § 10–3–12 provides:

"**Grounds for vacating award.**—In any of the following cases, the court must make an order vacating the award upon application of any party to the arbitration:

(1) Where the award was procured by corruption, fraud or undue means.

(2) Where there was evident partiality or corruption on the part of the arbitrators, or either of them.

(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in hearing legally immaterial evidence, or refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior by which the rights of any party have been substantially prejudiced.

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

The defendant argues to this Court that to establish bias sufficient to overturn an arbitrator's decision, plaintiff must demonstrate that the arbitrator has actual knowledge of the relationship between her law partner and Demetrios's former attorney. Further, defendant suggests that even if Cox knew that her law partner's brother had represented Demetrios in the bankruptcy proceeding, such a remote, tenuous relationship is insufficient to impute bias by the arbitrator.

■ A trial justice is required to confirm an arbitration award unless the party challenging the award demonstrates that one of the grounds set forth in § 10–3–12 is evident in the award. *Taylor v. Delta Electro Power, Inc.,* 741 A.2d 265, 267 (R.I.1999) (per curiam). An arbitration award may be vacated when there was evident partiality by the arbitrator and the party challenging the award bears "[t]he burden of proving facts that would establish a reasonable impression of partiality." *Id.* (quoting *Aetna Casualty & Surety Co. v. Grabbert,* 590 A.2d 88, 96 (R.I.1991)). In *Grabbert,* this Court set forth the standard of proof necessary to establish evident partiality by an arbitrator. Although we were confronted with a three-member arbitration panel in which one member had a contingent fee financial interest in the outcome, our analysis is also applicable to the conduct of a single arbitrator. An arbitrator is obliged to " 'conduct the proceedings in an evenhanded manner and treat all parties with equality and fairness at all stages of the proceedings.' " *Grabbert,* 590 A.2d at 94 (quoting *Barcon Associates, Inc. v. Tri–County Asphalt Corp.,* 86 N.J. 179, 430 A.2d 214, 219–20 (1981)). Proof of "evident partiality requires a showing of more than an appearance of bias but less than actual bias." *Id.* at 96. A party challenging an arbitration award on the grounds of evident partiality must establish, besides improper conduct or an improper relationship on the part of the arbitrator, a causal nexus between the impropriety and the arbitration award. *Id.* at 97. Although an elusive concept, evident partiality is established when " 'a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration.' " *Id.* at 96. This showing, coupled with a causal nexus between the evident partiality and the award, is grounds for vacating the award.

■ On appeal, plaintiff argues that constructive knowledge of a potential conflict of interest is sufficient grounds to challenge an arbitrator's impartiality. The partnership urges this Court to reject the notion that the party seeking to vacate an award must prove that the arbitrator had actual knowledge of an undisclosed relationship and, further, argues that by adopting a standard of constructive knowledge this Court will promote a policy of greater disclosure of potential conflicts of interest, thereby reducing the need for judicial review of arbitration awards. In essence, plaintiff is asking this Court to depart from the standard set forth in *Grabbert* and adopt a more relaxed standard of proof for arbitrator bias. We respectfully decline this invitation.

In *Grabbert,* we recognized as a starting point, "that it would be inappropriate to require the party-appointed arbitrator to adhere to the same standard of neutrality as a judge." *Grabbert,* 590 A.2d at 92. We recognized the practical realities of arbitration proceedings that are sometimes composed of party-appointed arbitrators who are experienced and respected members of the particular community related to the issues raised by the party. We cited with approval the concurring opinion of Justice White in *Commonwealth Coatings Corp. v. Continental Casualty Co.,* 393 U.S. 145, 150, 89 S.Ct. 337, 340, 21 L.Ed.2d 301, 305–06 (1968), that "arbitrators are not automatically disqualified by a

business relationship with the parties before them * * * if they are unaware of the facts but the relationship is trivial." This holding is in accord with the finding of the trial justice that even if Cox had knowledge of the brothers Moorman, such an insignificant relationship would not warrant disclosure or her disqualification from the proceeding.

We reject the plaintiff's suggestion that constructive notice of a potentially improper relationship is sufficient to overturn an arbitration award. We decline to burden an arbitrator with the largely impossible task of conducting such an extensive investigation, including an examination of the occupation and activities of the siblings of one's partners. Such a burdensome requirement would not further the public policy considerations surrounding the need for expeditious resolution of disputes and finality in arbitration proceedings. It is the policy of this state to encourage the resolution of disputes through arbitration. Accordingly, we refuse to adopt a procedure in which a losing party may make a post-decision challenge to an arbitrator's neutrality based upon information that, with the exercise of diligence, ought to have been discovered before the proceedings commenced.

The plaintiff's appeal is denied and dismissed and the judgment of the Superior Court is affirmed. The papers in this case may be remanded to the Superior Court.