**Dennis H. McGINITY**

v.

**PAWTUCKET MUTUAL INSURANCE CO.**

**No. 2005–32–Appeal.**

Supreme Court of Rhode Island.

June 13, 2006.

Thomas J. Grady, Esq., Westerly, for Plaintiff.

Paul J. Bogosian, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Chief Justice WILLIAMS, for the Court.

Pawtucket Mutual Insurance Co. (defendant) appeals a judgment entered in the Superior Court vacating an arbitration award to Dennis H. McGinity (plaintiff) on the ground that the defendant's non-neutral arbitrator (Pawtucket arbitrator) did not disclose that he was, at the time of the arbitration, employed as an attorney for the defendant, which created a relationship constituting "evident partiality" under G.L. 1956 § 10-3-12(2). This case came before the Supreme Court for oral argument on March 28, 2006, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the record and the memoranda filed by the parties, we are of the opinion that this appeal may be decided at this time, without further briefing or argument. For the reasons set forth below, we affirm the decision of the motion justice.

## I

### Facts and Travel

The facts leading up to the arbitration are not in dispute. The precursor to the arbitration proceedings was a 1990 automobile accident that injured plaintiff, who settled with the tortfeasor's insurer for the limits of his coverage. The plaintiff also filed a claim against defendant, plaintiff's insurance provider, claiming that his damages exceeded the amount paid to him by his tortfeasor's carrier. In 2001, defendant initiated arbitration proceedings based on the insurance policy that had been issued to plaintiff. Each party selected one arbitrator. The defendant selected the Pawtucket arbitrator as its party-appointed arbitrator; the third member of the panel was a neutral arbitrator selected by the other two arbitrators. After hearing the matter, the three-arbitrator panel convened to deliberate on April 2, 2002.

Sometime after April 2, plaintiff learned that the Pawtucket arbitrator was engaged in continuing legal representation of defendant in other unrelated matters. On April

11, 2002, plaintiff served a notice of demand, requesting that the Pawtucket arbitrator withdraw and a new panel be convened. The Pawtucket arbitrator did not withdraw. Instead, on April 12, 2002, the Pawtucket arbitrator and the neutral arbitrator both signed a majority decision assessing plaintiff's damages at $45,000. The plaintiff's party-appointed arbitrator dissented and, in a minority opinion, assessed plaintiff's damages at $636,000.

At an evidentiary hearing before the motion justice in the Superior Court, the Pawtucket arbitrator testified that he had an attorney-client relationship with Pawtucket Mutual, and was serving as its attorney in ongoing, unrelated cases during the time of the arbitration. The parties then filed cross-motions for judgment on the pleadings and, alternatively, summary judgment. The motion justice, with the parties' agreement, treated the matter as a motion for summary judgment.

The motion justice issued a bench decision vacating the award, in which she discussed the obligations of a party-appointed arbitrator under *Aetna Casualty & Surety Co. v. Grabbert,* 590 A.2d 88 (R.I.1991), and noted the likelihood that this Court would clarify our stance on the pertinent legal issue. We do so below.

## II

## Analysis

On appeal, defendant asks this Court to reverse the decision of the motion justice and reinstate the arbitration award. The plaintiff, in turn, contends that the motion justice was correct in determining that the Pawtucket arbitrator's position as attorney for defendant constituted a situation of evident partiality that required the arbitration award to be vacated. Both parties look to *Grabbert* as the definitive Rhode Island case on evident partiality and the

vacating of arbitration awards. The Rhode Island Trial Lawyers Association (RITLA) submitted an *amicus curiae* brief in support of plaintiff, suggesting that this Court review this case in light of recent amendments to the Code of Ethics for Arbitrators in Commercial Disputes (Code of Ethics).

■ "This Court reviews the granting of summary judgment *de novo* and applies the same standards as the motion justice." *DeCamp v. Dollar Tree Stores, Inc.,* 875 A.2d 13, 20 (R.I.2005). Rule 56(c) of the Superior Court Rules of Civil Procedure dictates that summary judgment

> "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

## A

## The *Grabbert* Standard

■ There is a " 'strong public policy in favor of the finality of arbitration awards.' " *Pierce v. Rhode Island Hospital,* 875 A.2d 424, 426 (R.I.2005). However, the judicial vacating of an arbitration award is appropriate in certain situations, specified by statute. Section 10–3–12. In relevant part, the statute requires that a court vacate an award "[w]here there was evident partiality or corruption on the part of the arbitrators, or either of them." Section 10–3–12(2).

In her decision, the motion justice tracked in part our opinion in *Grabbert,* in which we said that evident partiality will be found " 'where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration.' " *Grabbert,* 590 A.2d at 96. As in

the instant case, *Grabbert* stemmed from an automobile accident and the resulting arbitration between one of the drivers (Grabbert) and his insurance company (Aetna). *Id.* at 89. Aetna, among other claims, maintained that Grabbert's party-appointed arbitrator's contingency fee in the arbitration award constituted evident partiality such that the award should be vacated pursuant to § 10–3–12(2). *Grabbert*, 590 A.2d at 91. We reversed the decision of the trial justice, who had vacated the award. We reinstated the award, determining that

> "despite our belief that the party-appointed arbitrator's contingent fee gave him a direct financial interest in the award that was absolutely improper, we nevertheless believe that Aetna has failed to demonstrate the required causal nexus between the party-appointed arbitrator's improper conduct and the award that was ultimately decided upon." *Id.* at 92.

■ After *Grabbert*, a plaintiff arguing for the vacating of an arbitration award due to evident partiality must demonstrate not only an improper interest, but also a "causal nexus between the [party-appointed arbitrator's conduct] and the arbitration award." *See V.S. Haseotes & Sons, L.P. v. Haseotes*, 819 A.2d 1281, 1285 (R.I.2003) (applying the *Grabbert* test of impropriety coupled with causal nexus). We undertake this two-step analysis below.

## 1

### Improper Interest and the Disclosure Thereof

A party-appointed arbitrator is not a judge; as such, we have held that "it would be inappropriate to require the party-appointed arbitrator to adhere to the same standards of neutrality as a judge. That standard ignores the practical realities of arbitration panels composed of par-

ty-appointed arbitrators." *Grabbert*, 590 A.2d at 92.

In *Grabbert*, we "recognize[d] that evident partiality is an elusive concept for which no one has been able to articulate a precise legal standard." *Id.* at 96. However, "[m]ost courts that have addressed the issue have decided that a finding of evident partiality requires a showing of more than an appearance of bias but less than actual bias." *Id.* We then articulated a standard, stating that evident partiality is established where " 'a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration.' " *Id.; see also V.S. Haseotes & Sons, L.P.*, 819 A.2d at 1285.

■ When deciding *Grabbert*, we took into consideration the Code of Ethics as it stood at the time. *Grabbert*, 590 A.2d at 93. The Code of Ethics was updated most recently in 2004, and makes the following provisions for party-appointed arbitrators:

> "[Party-appointed arbitrators] should disclose to all parties, and to the other arbitrators, all interests and relationships which Canon II requires be disclosed. Disclosure as required by Canon II is for the benefit not only of the party who appointed the arbitrator, but also for the benefit of the other parties and arbitrators so that they may know of any partiality which may exist or appear to exist." Code of Ethics for Arbitrators in Commercial Disputes, Canon X(B)(1).

Taking into account both the revised Code of Ethics and the sensitive nature of the attorney-client relationship, the Pawtucket arbitrator should have disclosed his position to the opposing party and the other two arbitrators. However, under *Grabbert*, the analysis does not end here; therefore, we continue to the next step of determining whether the subject relation-

ship has a causal link to the amount of the arbitration award. Only if such a link is found will we vacate the arbitration award pursuant to § 10–3–12.

## 2

### Causal Nexus

In *Grabbert,* we declined to find a causal nexus where Aetna "failed to present any evidence beyond speculation" to demonstrate a causal link between the subject relationship and any partiality producing the arbitration award. *Grabbert,* 590 A.2d at 96 n. 4. We also relied on the existence of "factors * * * that would lead a reasonable person to believe that the party-appointed arbitrator was not improperly partial to Grabbert." *Id.* at 96. Crucially, in *Grabbert,* the arbitration award was supported by all three of the members of the arbitration panel. *Id.*

 In the instant dispute, however, plaintiff's party-appointed arbitrator not only declined to agree with the other two arbitrators, but also arrived at a drastically different amount as evidenced by his minority opinion. The fact that the neutral arbitrator voted for the arbitration award does not disprove a causal nexus between the Pawtucket arbitrator's relationship to defendant and the arbitration award that two of the panel members

reached. We believe that the particular nature of the attorney-client relationship, in which the attorney is duty-bound to serve as zealous advocate for his client, may fulfill the causal nexus requirement: An arbitrator who also serves as an attorney to one of the parties arrives at the arbitration table imbued with a uniquely privileged role that may often have an especially potent influence on the neutral arbitrator. It is our own judgment that the nondisclosure of the existence of such an attorney-client relationship should give rise to a rebuttable presumption that *Grabbert's* causal nexus requirement has been met. We perceive nothing in the record that convinces us that said presumption was rebutted in this case.[1]

## B

### The Code of Ethics and Mandatory Disclosure

In its *amicus curiae* brief in support of plaintiff, RITLA invites this Court to make an explicit holding within the confines of a *Grabbert* analysis that party-appointed arbitrators be required to disclose any conflicts, and that a failure to disclose should result in an automatic vacating of the award.[2] RITLA bases this argument on the 2004 revisions to the Code of Ethics, asserting that the amendments to the

---

**1.** The plaintiff argues in the alternative for a more lenient standard than the causal nexus requirement, citing the United States Supreme Court's analysis of evident partiality in *Commonwealth Coatings Corp. v. Continental Casualty Co.,* 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968). The arbitrator whose business relationship with one of the parties resulted in a finding of evident partiality in *Commonwealth Coatings* was a neutral arbitrator—*not,* as in this case, one of the two party-appointed arbitrators selected by the parties. *Id.* at 146–47, 89 S.Ct. 337. The obligations of a neutral arbitrator are distinct from those of a party-appointed arbitrator, and we fail to see how a case demanding

neutrality from a neutral arbitrator applies to the instant dispute over the particulars of a relationship enjoyed by a party-appointed arbitrator and the party who selected him. That difference noted, however, we do think that although the specialized nature of the attorney-client relationship does not remove the need to prove a causal nexus, it does provide "evidence beyond speculation" that a causal nexus may exist. *Aetna Casualty & Surety Co. v. Grabbert,* 590 A.2d 88, 96 n. 4 (R.I.1991).

**2.** We thank the amicus for the preparation of a well-reasoned and helpful brief.

Code of Ethics lead logically to a more explicit rule from this Court regarding disclosure requirements. RITLA suggests that party-appointed arbitrators still may retain a role in the arbitration process as long as all conflicts, especially direct conflicts, are fully disclosed.

We hesitate to adopt the implication of RITLA's argument: That the revised Code of Ethics weakens the important causal nexus provision in certain cases. The nature of party-appointed arbitrators makes clear that some kind of relationship exists between the party-appointed arbitrator and the party who appointed him or her. We agree that disclosure of the nature of the relationship lends further transparency to an important proceeding; however, RITLA's argument would be precariously close to the idea that *any* relationship between a party-appointed arbitrator and the party who appointed him or her is automatically indicative of evident partiality as a matter of law—and we are disinclined to go that far.

We acknowledged in *Grabbert* that the Code of Ethics offers guidance to this Court in undertaking analyses of the arbitration requirements. We have not wavered from that belief, but the guidance offered by the Code of Ethics is not sufficient to dilute the causal nexus requirement set out in the *Grabbert* test. Considering the nature of the party-appointed arbitrator and the principles of our arbitration system, such a rule would be inefficient and counterproductive. We decline to alter the *Grabbert* analysis by adopting the Code of Ethics requirement as law.

Although we decline to explicitly adopt the holding requested by RITLA, we do not call into question the increased disclosure requirements under the revised Code of Ethics. We encourage full disclosure from arbitrators, while acknowledging that the very nature of the tripartite arbitrator system indicates to all that some relationship exists between each party and his or her appointed arbitrator. The parties to an arbitration have agreed to settle their dispute without a judge; judicial economy dictates that our interference be limited to instances that we deem appropriate.[3] That said, we remind and encourage all party-appointed arbitrators: When in doubt, disclose.

## Conclusion

For the reasons discussed above, we affirm the judgment of the motion justice. The record shall be returned to the Superior Court, and the parties shall embark on another arbitration not inconsistent with this opinion.

Justice Flaherty, dissenting.

I respectfully dissent from the majority's holding in this case. Tripartite arbitration is a unique, anomalous and somewhat murky world. As has been set forth in many cases, non-neutral (or party-appointed) arbitrators are expected to advocate on behalf of the party who appointed them and to do their best to present the facts to the neutral arbitrator in the light most favorable to that party. *See, e.g., Local 472, International Brotherhood of Police Officers v. Town of East Greenwich*, 635 A.2d 269 (R.I.1993); *Aetna Casualty & Surety Co. v. Grabbert*, 590 A.2d 88 (R.I. 1991). Undoubtedly, that happened here with respect to *both* sides in this arbitration. In the hearing that occurred in the Superior Court, McGinity's party-appointed arbitrator testified that he had used documents prepared by McGinity's counsel

3. Although we are of the opinion that the Pawtucket arbitrator should have disclosed his attorney-client relationship with the insur-er, we also are satisfied that he performed his duties professionally and competently, and is a well-respected member of the bar.

detailing the chronology of events. At oral argument before this Court, counsel for McGinity conceded that he was in regular contact with his party-appointed arbitrator over the course of the arbitration proceedings, and that they consulted on strategy to advance McGinity's cause.

Despite that, I can accept the majority's rationale that there was a special relationship between Pawtucket Mutual and its non-neutral arbitrator by virtue of the fact that the arbitrator, an attorney, had represented the company on other matters, and that this relationship should have been disclosed to the neutral arbitrator.[4] Parenthetically, it appears that McGinity's party-appointed arbitrator, also a member of the bar, knew of the relationship between Pawtucket Mutual and its party-appointed arbitrator. In the Superior Court, he testified that even though he was unaware of any ongoing representation of Pawtucket Mutual by its party-appointed arbitrator, he thought that "Pawtucket Mutual has been a client of [that party-appointed arbitrator] for a long time. I know that he * * * represents Pawtucket Mutual as an entity and does work for them as a party arbitrator. I think he has a pretty good relationship with that entity."

Where I depart from the majority's reasoning, however, is its holding that a failure to disclose the attorney-client relationship warrants modification to the second prong of the *Grabbert* analysis. To me, the situation presented in this case is not nearly as fraught with difficulties as that in *Grabbert,* in which a non-neutral arbitrator had a direct financial interest in the outcome of the case. While it is true that *Grabbert* was a unanimous award and here the panel was divided (indeed there was a dissenting opinion with a strikingly higher damage award), that should not be the end of our analysis with respect to the principles set forth in *Grabbert.*

According to the majority, the failure to disclose the attorney-client relationship in this case "should give rise to a rebuttable presumption that *Grabbert's* causal nexus requirement has been met. We perceive nothing in the record that convinces us that said presumption was rebutted in this case." I appreciate and respect the difficulties encountered by the majority as this Court again struggles with the slippery issue of what constitutes evident partiality in a process that has, by agreement, inherently partial aspects. As the majority recognizes, a party-appointed arbitrator is not a judge, and he or she is not held to the same strict standard as the neutral arbitrator. But even a party-appointed arbitrator has an obligation to " 'conduct the proceedings in an evenhanded manner and treat all parties with equality and fairness at all stages of the proceedings.' " *Grabbert,* 590 A.2d at 94 (quoting *Barcon Associates, Inc. v. Tri–County Asphalt Corp.,* 86 N.J. 179, 430 A.2d 214, 220 (1981)). For sure, this standard should apply to party-appointed and neutral arbitrators alike.

However, even if one accepts the majority's deviation from the principles set forth in *Grabbert* by its holding that the relationship between Pawtucket Mutual and its party-appointed arbitrator gave rise to a rebuttable presumption of causality supporting a conclusion of evident partiality, I

---

4. Indeed, I would go farther, because in my opinion, all continuing relationships between parties and non-neutral arbitrators should be disclosed, not merely those of attorney-client. Many arbitration panels consist of non-lawyers who are involved in frequent and consistent relationships with the parties that retain them for arbitration panels. Such disclosure would maintain the integrity of the process and certainly would assist the neutral arbitrator in weighing the arguments made on behalf of each party.

believe that any such presumption has been overcome based on the record in this case. To me, the critical testimony in the hearing below was that of Dennis McCarten, the neutral arbitrator. McCarten, an experienced civil litigator who is well versed in the arbitration process, testified that he was well aware that the non-neutral arbitrators have an "ax to grind." He further said that although he did not know of the relationship between Pawtucket Mutual and its party-appointed arbitrator, he was not surprised by it. Most significantly, however, McCarten testified that "without any doubt that I had quite honestly made up my mind consistently with the decision we rendered before I went into the meeting," and that Pawtucket Mutual's party-appointed arbitrator "had no influence in my thinking about this case." That testimony was uncontradicted and it was not shaken on cross-examination.

Therefore, even if I accept the majority's rationale of a rebuttable presumption of evident partiality because of the relationship between Pawtucket Mutual and its party-appointed arbitrator, the presumption has been overcome, and McGinity's challenge to the arbitration award should fail because the second prong of the *Grabbert* test has not been surmounted. For these reasons, I dissent from the majority's holding and would reverse the judgment of the Superior Court.