March 20, 2025

**Supreme Court**

No. 2023-335-Appeal.
(PM 23-3024)

Vermont Mutual Insurance Company  :

v.  :

New England Property Services
    Group, LLC, et al.  :

NOTICE:  This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Vermont Mutual Insurance Company    :

v.                :

New England Property Services     :
    Group, LLC, et al.[1]

Present:  Suttell, C.J., Goldberg, Robinson, and Long, JJ.

## O P I N I O N

**Justice Robinson, for the Court.**  The plaintiff, Vermont Mutual Insurance

Company (Vermont Mutual), appeals from a July 27, 2023 Superior Court order

denying its petition to vacate an appraisal award and granting the cross-petition of

the defendant, New England Property Services Group, LLC (NEPSG), to confirm

said appraisal award.  Vermont Mutual contends on appeal that the hearing justice

erred in failing to vacate the award because, in its view, there was evident partiality

on the part of the defendant's appraiser.

For the reasons set forth in this opinion, we vacate the order of the Superior

Court, and we remand this case for further proceedings consistent with this opinion.

---

[1]    In Vermont Mutual's petition to vacate, Joanne St. Vil was also listed as a
defendant.  However, for reasons that will become clear, she has not participated in
the proceedings in the Superior Court or in this Court.

# I

## Facts and Travel

This case ultimately relates to a homeowners insurance policy that Vermont Mutual issued to one Joanne St. Vil for property located in Rumford, Rhode Island. The facts of this case are largely uncontested and are derived from (1) Vermont Mutual's "Petition to Vacate the Appraisal Award," which was filed in the Superior Court on June 27, 2023, and from (2) NEPSG's "Cross Petition to Confirm the Appraisal Award," which was filed on July 11, 2023.

Vermont Mutual received a claim by or on behalf of Ms. St. Vil for windstorm damage to the Rumford property that was alleged to have occurred on December 25, 2020. After retaining an "independent adjuster and roofing expert" to inspect the property concerning the claimed damages, Vermont Mutual paid Ms. St. Vil's claim. Vermont Mutual was later notified that Ms. St. Vil had "engaged the services of contractor Steven Ceceri * * * of NEPSG to complete the exterior and interior restoration." Significantly, Mr. Ceceri is the sole owner and operator of NEPSG.

Thereafter, Vermont Mutual learned of additional claimed damages to the property, which resulted in a reinspection of the property. Mr. Ceceri disagreed with the scope of Vermont Mutual's assessment of the additional claim-related damages. According to Vermont Mutual, based on the reinspection, the estimates were revised and Vermont Mutual issued an additional claim payment. However, Mr. Ceceri

continued to dispute the scope and coverage relative to the claim damages. At some point, Ms. St. Vil executed an assignment of her insurance claim to NEPSG in exchange for its work on the property.

On April 13, 2022, counsel for NEPSG directed correspondence to Vermont Mutual, indicating that NEPSG "demanded appraisal concerning the underlying claim." The Vermont Mutual insurance policy at issue provides that, in the event an insured demands an appraisal of the loss, each party will choose "a competent appraiser within 20 days after receiving a written request from the other," and it also provides that "[t]he two appraisers will choose an umpire." The policy further requires that the appraisers separately "set the amount of loss." If the appraisers do not agree as to the amount, they are to submit their differences to the umpire, and a "decision agreed to by any two will set the amount of loss."

According to Vermont Mutual, Mr. Ceceri was named as the appraiser on behalf of NEPSG despite "his clear and undisputed financial interest in the outcome of the appraisal." In its petition to vacate the appraisal award, Vermont Mutual asserted that it had objected to Mr. Ceceri acting as an appraiser because he was not "disinterested;" however, Vermont Mutual further asserted that it had "agreed to go forward with the appraisal and reserved any and all rights to dispute the award." The appraisal ultimately went forward with Mr. Ceceri serving as the appraiser for

- 3 -

NEPSG, Vincent Cicci serving as the appraiser for Vermont Mutual, and Felix Carlone serving as the appraisal umpire.

According to an exhibit attached to NEPSG's cross-petition, Mr. Ceceri's appraisal was $207,053.11, while Mr. Cicci's appraisal was $67,645.99. The final award appraised the loss at $144,855.37. (With interest, the total amount of the award was $185,797.02.) The "Agreement Award" indicates that Mr. Ceceri and Mr. Carlone signed the award, but Mr. Cicci did not sign on behalf of Vermont Mutual.

In due course, Vermont Mutual filed a petition to vacate the appraisal award, noting that, pursuant to G.L. 1956 chapter 3 of title 10 (the Arbitration Act), the Superior Court has "jurisdiction to vacate, modify, or correct an award." Vermont Mutual asserted that, as a result of what it alleged to be Mr. Ceceri's evident partiality, the appraisal award should have been vacated in accordance with § 10-3-12.[2] NEPSG then filed its response and cross-petition to confirm the appraisal award, in which it admitted that the Superior Court had jurisdiction pursuant to the Arbitration Act and requested that the court grant its cross-petition

---

[2] General Laws 1956 § 10-3-12(2) provides in pertinent part that a court "must make an order vacating the award upon the application of any party to the arbitration" in the event of "*evident partiality* or corruption on the part of the arbitrators, or either of them." (Emphasis added.)

- 4 -

"and order that the appraisal award issued in this matter be confirmed pursuant to" the Arbitration Act.

A hearing on Vermont Mutual's petition to vacate and NEPSG's cross-petition was held on July 20, 2023. At the hearing, Vermont Mutual argued that, because appraisals are a form of arbitration under Rhode Island law, "they must follow the Rules of the Arbitration Act," which in pertinent part require that an award be vacated if "there was evident partiality or corruption" on the part of the arbitrators. Specifically, Vermont Mutual asserted that Mr. Ceceri "had direct, 100 percent financial interest in the appraisal award as his company received assignment of the claim from the policy holder and was also contracted to perform the claimed repairs to the home." NEPSG countered by underscoring the fact that Vermont Mutual's policy required only a "competent" appraiser and did not require a competent and *disinterested* appraiser, as would be required under G.L. 1956 § 27-5-3.[3] In addition, NEPSG contended that, pursuant to § 27-5-10, the language of the insurance policy should be binding upon Vermont Mutual. NEPSG further argued that, while Mr. Ceceri may have been financially interested in the award, "that interest had no causal

---

[3] General Laws 1956 § 27-5-3 sets forth the "form of the standard fire insurance policy of the state of Rhode Island," which is relevant in this case. Importantly, that form provides that, in the event that the "insured and this company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a *competent and disinterested appraiser* * * *." (Emphasis added.)

- 5 -

nexus to the actual award that was issued." NEPSG also noted that the final appraisal award was $60,000 less than Mr. Ceceri's appraisal and $8,000 more than Mr. Cicci's appraisal.[4]

In ruling on the motion, the hearing justice first focused on a separate Superior Court case, over which he had presided—namely, *New England Property Services Group, LLC v. Liberty Insurance Corporation* (PM 22-3869), which involved a policy with similar language in its appraisal clause. In that case, the hearing justice had ruled: "[T]he policy does not require the appraiser to be 'competent and disinterested' which does not conform with [§] 27-5-3 and therefore [Mr.] Ceceri may serve as Plaintiff's appraiser because he is 'competent' as required under the policy." Returning to the case at bar, the hearing justice stated that, in view of how he had "already ruled" in the previous case, he was going to deny the petition to vacate in the instant case. The hearing justice also granted NEPSG's cross-petition to confirm the award.

An order denying Vermont Mutual's petition to vacate and granting NEPSG's cross-petition to confirm was entered on July 27, 2023. On August 15, 2023, Vermont Mutual filed a timely notice of appeal.

---

[4] We note that there is a discrepancy as to NEPSG's representation regarding the final award. The record reveals that the final award was approximately $77,000 in excess of Mr. Cicci's appraisal, not $8,000 as NEPSG had suggested at the July 20, 2023 hearing.

## II

## Issue on Appeal

On appeal, Vermont Mutual contends that, in denying its petition to vacate the appraisal award and granting NEPSG's cross-petition, the hearing justice erred "by failing to apply the relevant standard in determining whether the appraisal award should [have been] vacated pursuant to * * * § 10-3-12(2) due to the presence of evident partiality on the part of [Mr.] Ceceri."

## III

## Standard of Review

This Court has established that it deferentially views the factual findings of a trial justice sitting in a nonjury case. *See Grady v. Narragansett Electric Company*, 962 A.2d 34, 41 (R.I. 2009). We have further made clear that, "[i]n accordance with that principle, we will not disturb the findings of a trial justice sitting without a jury unless such findings are clearly erroneous or unless the trial justice misconceived or overlooked material evidence or unless the decision fails to do substantial justice between the parties." *Id.* (internal quotation marks omitted). However, "[i]n contrast to our deferential stance vis-à-vis factual findings made by a trial justice, we review in a *de novo* manner a trial justice's rulings concerning questions of law." *Id.*

# IV

## Discussion

### A

### The Appraisal Process as Arbitration

Vermont Mutual first addresses NEPSG's "most recently presented argument"—namely, that the appraisal at issue does not constitute arbitration.[5] Because this argument was made for the first time on appeal, Vermont Mutual asserts that NEPSG has waived the right to explain to this Court its view concerning this issue. In addition to its contention as to waiver, Vermont Mutual has proceeded to address the merits of NEPSG's argument by contending that "the appraisal procedure at issue in this matter clearly constitutes arbitration under applicable Rhode Island law."

For its part, NEPSG argues that the Superior Court lacked subject matter jurisdiction under the Arbitration Act to vacate the appraisal award because the appraisal process at issue in this case did not qualify as an arbitration. NEPSG further contends that, because it is challenging the subject matter jurisdiction of the Superior Court, its challenge cannot be waived and may be raised at any time.

---

[5] Said argument was first raised in the counterstatement that NEPSG filed in accordance with Article I, Rule 12A of the Supreme Court Rules of Appellate Procedure.

NEPSG further offers several reasons as to why the appraisal process in the instant case should not be considered to have been an arbitration. First, it argues that the appraisal process "determines the Claim's amount of loss but does not encompass the complete satisfaction of the Claim—it does not resolve coverage or legal liabilities related to breach of contract, bad faith settlement practices, etc." (Footnote omitted.) Secondly, NEPSG contends that, because Vermont Mutual's appraisal provision "is less procedurally stringent than even the appraisal provision of § 27-5-3, and appraisals under § 27-5-3 do not qualify as arbitrations in every instance, the Arbitration Act is inapplicable to this appraisal." In addition, NEPSG maintains that, had the General Assembly intended for the Arbitration Act to apply to such policy appraisal proceedings, it would have included such language in § 27-5-3 as it had done with the "motor vehicle policy statutes."

We first turn our attention to NEPSG's argument as to subject matter jurisdiction. This Court has long acknowledged that a "challenge to subject matter jurisdiction may not be waived by any party and may be raised at any time in the proceedings." *E.T. Investments, LLC v. Riley*, 262 A.3d 673, 676 (R.I. 2021) (quoting *Federal National Mortgage Association v. Malinou*, 101 A.3d 860, 866 (R.I. 2014)). We would note at the outset that it is our view that in actuality NEPSG is not genuinely contesting the Superior Court's *jurisdiction* over this matter. It is clear that the Superior Court had jurisdiction under G.L. 1956 § 8-2-14 and the

Arbitration Act. Rather, NEPSG is actually questioning the nature of the appraisal process and, more specifically, whether it should be considered arbitration. Thus, it appears to us that NEPSG is questioning the *authority* of the Superior Court to decide this particular issue and not the court's *jurisdiction* as such. Simply put, NEPSG is contending that the Superior Court improperly exercised its jurisdiction. *See Cronan v. Cronan*, 307 A.3d 183, 191 (R.I. 2024) ("This Court has noted * * * that the term subject-matter jurisdiction is often misused; when properly used, it refers only to a court's power to hear and to decide a particular case, and not to whether a court, having the power to adjudicate, should exercise that power.") (internal quotation marks, brackets, and deletion omitted); *see also Pollard v. Acer Group*, 870 A.2d 429, 433 (R.I. 2005) ("The term 'lack of jurisdiction over the subject matter' means quite simply that a given court lacks judicial *power* to decide a particular controversy.").

Section 10-3-11 of the Arbitration Act provides that a party to arbitration "may apply to the court for an order confirming the award" within one year after the award is made. The court must vacate an award if one of the circumstances listed in § 10-3-12 is present. In view of the fact that the General Assembly has authorized the Superior Court to either confirm or vacate an award, it logically follows that the Superior Court has subject matter jurisdiction over petitions filed pursuant to the Arbitration Act. In the instant case, this Court is left with no doubt that the Superior

Court had jurisdiction over Vermont Mutual's petition to vacate the award and NEPSG's cross-petition to confirm the award; and we are also of the view that the court acted properly in exercising its jurisdictional power. *See Pollard*, 870 A.2d at 433. We note that NEPSG did not object to Vermont Mutual filing its petition to vacate pursuant to the Arbitration Act; moreover, it admitted to the Superior Court's jurisdiction under the Arbitration Act in its response and cross-petition to confirm the appraisal award. Having established that the Superior Court had subject matter jurisdiction over this case, we next proceed to address whether the appraisal process in this case can be equated with arbitration.

In *Waradzin v. Aetna Casualty and Surety Company*, 570 A.2d 649 (R.I. 1990), a dispute concerning insurance claims could not be resolved, and the matter "was referred to the dispute-resolution procedure called for by the policy under the heading 'Appraisal.'" *Waradzin*, 570 A.2d at 649. Importantly, the policy at issue in *Waradzin* contained the following pertinent language:

> "In case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser * * *. The appraisers shall first select a competent and disinterested umpire * * *. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed

- 11 -

with this Company shall determine the amount of actual
cash value and loss." *Id.* at 649-50.

After the appraisal award was issued, the plaintiff commenced suit in the Superior Court to confirm the award pursuant to § 10-3-11. *Id.* at 650. Before the Superior Court, the defendant argued that "appraisal procedure called for under the policy was not the same as arbitration and, therefore, not subject to the arbitration confirmation procedure * * *." *Id.* The Superior Court rejected that argument and upheld the award. *Id.* The defendant then appealed to this Court. *Id.*

In addressing on appeal the question of whether the appraisal procedure constituted arbitration, this Court in *Waradzin* first noted that it has been recognized that "an 'appraisal' procedure can be equated with 'arbitration.'" *Waradzin*, 570 A.2d at 650. The Court relied on its previous decision in *Grady v. Home Fire and Marine Insurance Co.*, 27 R.I. 435, 63 A. 173 (1906), wherein the Court determined whether the plaintiff could litigate in court against the insurance company before completing the appraisal procedure called for in the insurance policy. *Id.* This Court in *Waradzin* noted that the policy language in *Grady* was nearly identical to the policy language at issue in the case then on appeal. *Id.* The Court in *Waradzin* further emphasized that the Court in *Grady* had used the terms "appraisal" and "arbitration" interchangeably. *Id.* Notably, the Court in *Waradzin* stated that "[w]hat labels are used in describing the procedure called for in a policy are not controlling;" it added that "we believe it is the substance of the transaction that determines its

- 12 -

character." *Id.* Consequently, the Court in *Waradzin* held that the arbitration confirmation proceeding in that case was appropriate. *Id.*

In *Waradzin*, this Court also emphasized that, when the plaintiff referred to the proceedings in his application to confirm the award as "arbitration," the defendant "admitted these allegations in its answer." *Waradzin*, 570 A.2d at 650. And the Court further noted that the defendant had "made no objection to the characterization of the proceedings until it was time to confirm the award." *Id.* at 650-51. The Court further made clear that it has "recognized that a party wishing to object to the arbitrability of a dispute must state his objection on those grounds at the arbitration hearing or refuse to submit to the process and pursue his remedy in court." *Id.* at 651.

This Court's statements and rulings in *Waradzin* are wholly applicable to the present case, and we discern no reason to abandon its cogently articulated principles concerning the determination of whether a particular appraisal constitutes arbitration. Turning to the specific language of the appraisal provision in Vermont Mutual's policy, which sets forth its appraisal procedure, we are of the opinion that the process at issue in the instant case can be equated with arbitration. Vermont Mutual's policy includes the following pertinent language:

> "If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two

- 13 -

appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the 'residence premises' is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss."

This language can reasonably be interpreted as providing for a dispute resolution process that, for all intents and purposes, is an arbitration. Significantly, the policy appraisal language at issue here comes tantalizingly close to mirroring the policy appraisal language at issue in *Waradzin* as well as the policy appraisal language at issue in the *Grady* case. *See Waradzin*, 570 A.2d at 649-50; *Grady*, 27 R.I. at 436-37, 63 A. at 173.

The appraisal language in Vermont Mutual's policy as well as the appraisal language in both *Waradzin* and *Grady* call for a process pursuant to which each party selects its own appraiser, and the two appraisers then choose an umpire. Those policies also require that the appraisers' differences be submitted to the umpire in the event that they fail to agree on a final award. They further provide that an award agreed to by any two of the appraisers or by one appraiser and the umpire shall set the amount of loss. We are not persuaded by the argument that the absence of the term "disinterested" from Vermont Mutual's policy somehow materially

- 14 -

differentiates it from the appraisal processes that this Court in *Waradzin* and *Grady* has held to be an arbitration.

Additionally, as was the case in *Waradzin* where the defendant made no objection to the characterization of the proceedings as arbitration until confirmation of the award was sought, NEPSG in the instant case at no point in the proceedings below objected to the applicability of the Arbitration Act. *See Waradzin*, 570 A.2d at 650-51. Moreover, as we have previously noted, in its response and cross-petition to confirm the appraisal award, NEPSG admitted to the Superior Court's jurisdiction under the Arbitration Act. Significantly, not only did NEPSG fail to suggest that the appraisal process does not constitute arbitration, but NEPSG in fact argued that the standards for confirming or vacating an appraisal award pursuant to § 10-3-11 and § 10-3-12 of the Arbitration Act applied to the appraisal award in this case.

For these reasons, we hold that the appraisal procedure outlined in Vermont Mutual's policy can be equated with arbitration and that the Arbitration Act is therefore applicable.

## B

### Evident Partiality

On appeal, Vermont Mutual also contends that there are grounds for vacating the appraisal award pursuant to the Arbitration Act due to the presence of "evident partiality" on the part of Mr. Ceceri. Specifically, Vermont Mutual asserts that it

has satisfied the necessary criteria that must be established by a party petitioning the court to vacate an appraisal award. For its part, NEPSG contends that, because it followed the policy's appraisal clause, there are "no grounds under § 10-3-12 for vacating the award." NEPSG deems significant the fact that Vermont Mutual's policy language required only that the appraisers be competent—not impartial or disinterested.

Although this Court acknowledges the creative nature of NEPSG's attempt to frame this particular issue as one of contract interpretation, the reality is that, after due consideration, we are unpersuaded by NEPSG's contention that it should be allowed to use the language of the policy concerning the appraisal process as a way to shield itself from the reach of the Arbitration Act. While we have acknowledged that arbitrators are not expected to be totally impartial or disinterested and that there is an expectation that party-appointed arbitrators will serve as nonneutrals, flagrant partiality serves to undermine the integrity of the arbitration process. *See Aetna Casualty & Surety Company v. Grabbert*, 590 A.2d 88, 92-95 (R.I. 1991). Additionally, as previously mentioned, NEPSG invoked the Arbitration Act in filing its cross-petition. NEPSG thus cannot now successfully argue that its cross-petition to confirm as well as Vermont Mutual's petition to vacate are exempt from the important safeguards that are contained in the Arbitration Act.

- 16 -

Pursuant to § 10-3-12(2), a court must vacate an award upon the application of any party to the arbitration "[w]here there was evident partiality or corruption on the part of the arbitrators, or either of them." This Court has acknowledged that evident partiality "will be found 'where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration.'" *Grabbert*, 590 A.2d at 96 (quoting *Morelite Construction Corp. v. New York City District Council Carpenters Benefit Funds*, 748 F.2d 79, 84 (2d Cir. 1984)).

In *Grabbert*, this Court established a two-step test for determining whether there is evident partiality on the part of a party-appointed appraiser. First, a party seeking to vacate an award must establish an improper interest on the part of the appraiser. *Grabbert*, 590 A.2d at 92. Secondly, there must be a "causal nexus" between the party-appointed appraiser's conduct and the appraisal award. *Id.* [6]

In *Grabbert*, the arbitrator appointed by the insured was working on a contingent fee basis (ten percent of the ultimate award would be his fee), which this Court stated "gave him a direct financial interest in the award that was absolutely improper * * *." *Grabbert*, 590 A.2d at 90, 92. Nonetheless, this Court went on to state that the defendant had "failed to demonstrate the required causal nexus between

---

[6] The following astute observation by Judge Irving Kaufman on the subject of evident partiality is pertinent to the instant case: "An inquiry into issues of fairness, bias, partiality and the like overflows with factual questions." *Morelite Construction Corp. v. New York City District Council Carpenters Benefit Funds*, 748 F.2d 79, 81 (2d Cir. 1984).

- 17 -

the party-appointed arbitrator's improper conduct and the award ultimately decided upon." *Id.* at 96. In arriving at that conclusion, this Court emphasized *inter alia* that the award in that case "was a unanimous decision of three experienced arbitrators." *Id.*

In *McGinity v. Pawtucket Mutual Insurance Co.*, 899 A.2d 504 (R.I. 2006), this Court was again faced with the question of whether an arbitration award should be vacated due to the existence of evident partiality. *McGinity*, 899 A.2d at 505. This Court determined that the failure on the part of the arbitrator to disclose to the opposing party and to the other two arbitrators his position as an attorney for the defendant satisfied the first step of the test articulated in *Grabbert*. *Id.* at 507. In addressing the question of causal nexus, this Court in *McGinity* pointed out that, unlike the award in *Grabbert*, the award at issue in the case then on appeal was not unanimous. *Id.* at 508. The Court also noted that the "plaintiff's party-appointed arbitrator not only declined to agree with the other two arbitrators, but also arrived at a drastically different amount as evidenced by his minority opinion." *Id.* The Court further emphasized that the "fact that the neutral arbitrator voted for the arbitration award does not disprove a causal nexus between the * * * arbitrator's relationship to defendant and the arbitration award that two of the panel members reached." *Id.* The Court in *McGinity* ultimately held that an attorney-client

relationship between the arbitrator and the insurer was sufficient to supply the causal nexus between the improper conduct and the award. *Id.*

In the instant case, it is quite evident that Mr. Ceceri had a direct financial interest in the award. Mr. Ceceri is the sole owner and operator of NEPSG as well as the assignee of Ms. St. Vil's insurance claim. Therefore, NEPSG in this case acted as its own appraiser with the entire appraisal award ultimately being payable to Mr. Ceceri. In other words, Mr. Ceceri stood to benefit solely on the basis of his being the party-appointed appraiser, thereby standing to exclusively benefit from the award. To that end, NEPSG's emphasis on the fact that Vermont Mutual continued to partake in the appraisal process in spite of the disclosure of Mr. Ceceri as NEPSG's appraiser is unavailing. In its petition to vacate the appraisal award, Vermont Mutual asserted that it objected to Mr. Ceceri acting as an appraiser because he was not "disinterested." These largely undisputed facts establish an improper interest on the part of Mr. Ceceri, and the first step of the test articulated in *Grabbert* has therefore been satisfied.

As for the second step of the *Grabbert* test, it is quite clear that there was a causal nexus between Mr. Ceceri's conduct and the final appraisal award. As was the case in *McGinity*, the award at issue here was not unanimous. In the instant case, Mr. Ceceri's appraisal was $207,053.11, while Mr. Cicci's appraisal was $67,645.99. The final award appraised the loss at $144,855.37, exclusive of interest.

It is clear from these numbers that Mr. Ceceri and Mr. Cicci arrived at drastically different amounts. We do not believe it to be at all irrational to suggest that Mr. Ceceri's inflated amount was potentially motivated by his direct financial interest in the award. Moreover, the "Agreement Award" indicates that Mr. Ceceri and Mr. Carlone signed the award, whereas Mr. Cicci declined to sign on behalf of the insurer. In our view, these uncontroverted facts thus establish a causal nexus similar to the one identified in *McGinity*. *See McGinity*, 899 A.2d at 508. Accordingly, we hold that the award should have been vacated due to the presence of evident partiality and that the hearing justice erred in failing to conduct this necessary analysis. *See generally Morelite Construction Corp.*, 748 F.2d at 85.

We conclude by noting that there are some instances where parties are free to contract in ways that effectively waive protective provisions that are contained within a relevant civil statute. For example, under some circumstances, competent parties might be deemed to have waived the protective provisions of the Statute of Frauds if they did so knowingly and voluntarily.[7] Nevertheless, there are some public policies that are so important that statutes relating to those policies should be understood to preclude the right to waive a protective statutory provision. One of those overarching public policies is the need to maintain the integrity of the

---

[7]    *See generally D'Ellena v. Town of East Greenwich*, 21 A.3d 389 (R.I. 2011); *Adams-Riker, Inc. v. Nightingale*, 119 R.I. 862, 383 A.2d 1042 (1978).

alternative dispute resolution process as well as the public's appreciation of that integrity. We are of the same mind as our predecessors on this Court, who expressly noted that they were "cognizant of the need for public confidence and integrity in the arbitration process." *Grabbert*, 590 A.2d at 92. This Court has encouraged parties to "contract to use arbitration as an expeditious and informal means of private dispute resolution, thereby avoiding litigation in the courts." *Id.* And we are keenly aware that the existence of evident partiality undermines these crucial aspects of arbitration. *Id.* ("Any impropriety that undermines public confidence in and the integrity of the arbitration process detracts from its legitimacy as an alternative method of private dispute resolution.").

Bearing in mind the authorities that we have cited and our convictions about the integrity of the alternative dispute resolution process, we have concluded that the appraisal award at issue in this case must be vacated due to the evident partiality of the appraiser for NEPSG.

V

**Conclusion**

For the reasons set forth in this opinion, we vacate the order of the Superior Court, and we remand this case to that tribunal with the direction that it order a new appraisal.

Justice Lynch Prata did not participate.

- 21 -



## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Vermont Mutual Insurance Company v. New England Property Services Group, LLC, et al. |
| **Case Number** | No. 2023-335-Appeal. (PM 23-3024) |
| **Date Opinion Filed** | March 20, 2025 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, and Long, JJ. |
| **Written By** | Associate Justice William P. Robinson III |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice R. David Cruise |
| **Attorney(s) on Appeal** | For Plaintiff: Edward A. Bopp, Esq. |
| | For Defendant: Thomas J. Alves, Esq. |